915 P.2d 21

**FEDERATED PUBLICATIONS, INC., a Delaware Corporation, dba The Idaho Statesman, Plaintiff–Appellant,**

v.

**BOISE CITY, an Idaho Municipality, Defendant–Respondent.**

**FEDERATED PUBLICATIONS, INC., a Delaware Corporation, dba The Idaho Statesman, Plaintiff–Respondent–Cross Appellant,**

v.

**BOISE CITY, an Idaho Municipality, Defendant–Appellant–Cross Respondent.**

**Nos. 21218, 21288.**

Supreme Court of Idaho,
Boise, December 1995 Term,
1996 Opinion No. 41.

April 17, 1996.

**460**

Davis, Wright & Tremaine, Boise, and Seattle, Washington, for appellant.

Michael J. Killeen, argued.

Lynch, Moore, Baskin & Parker, Boise, for respondent. Michael W. Moore, argued.

JOHNSON, Justice.

This is a public records disclosure case. We conclude that the public records law requires disclosure of all the records and information sought. This includes the names and resumes of applicants to be appointed to vacant city council positions and a police department administrative review following a shooting involving police officers.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

Federated Publications, dba The Idaho Statesman (the Statesman), made two public records requests pursuant to the Idaho public records law (the public records law). I.C. §§ 9–337 to –347 (1990 & Supp.1995). First, the Statesman asked the Boise police department (BPD) for two police records related to an investigation of a shooting incident involving BPD officers. One record was an investigation report prepared in connection with the shooting. The other record was an "administrative review" (the administrative review) made by BPD's office of professional standards. BPD denied both of these requests.

In its second request, the Statesman asked the City of Boise (the city) for the names and resumes related to the applications for vacant positions on the city council. The city declined to release these records and information without each applicant's permission. All but five of the applicants agreed to release the records and information.

The Statesman brought an action against the city's chief of police and against the city to compel the disclosure of the records and information it sought. Ruling on cross-mo-

tions for summary judgment, the trial court concluded that the Statesman is entitled to the names of the city counsel applicants, but not to their resumes. The Statesman appealed the ruling denying disclosure of the resumes, and the city appealed the ruling granting disclosure of the names. The trial court also concluded that BPD must disclose the investigation report but not the administrative review. The Statesman appealed the portion of the trial court's decision denying disclosure of the administrative review.

## II.

### THE NAMES AND RESUMES OF THE CITY COUNCIL APPLICANTS ARE NOT EXEMPT FROM DISCLOSURE.

 The city asserts that the trial court should not have required the disclosure of the names of the city council applicants who did not consent to the disclosure. We disagree. The Statesman asserts that the trial court should have required disclosure of the resumes of the city council applicants who did not consent to the disclosure. We agree.

The public records law provides that "[e]very person has a right to examine and take a copy of any public record of this state and there is a presumption that all public records in Idaho are open at all reasonable times for inspection except as otherwise expressly provided by statute." I.C. § 9–338(1) (1990). A public record "includes, but is not limited to, any writing containing information relating to the conduct or administration of the public's business prepared, owned, used or retained by any state or local agency regardless of physical form or characteristics." I.C. 9–337(10) (1990).

The public records law exempts some public records from disclosure. I.C. § 9–340 (Supp.1995). At issue in this case are the following exemptions:

The following records are exempt from disclosure:

. . . .

Except as provided in this subsection, all personnel records of a current or former public official other than the public offi-

cial's public service or employment history, classification, pay grade and step, longevity, gross salary and salary history, status, workplace and employing agency. All other personnel information relating to a public employee or applicant, including, but not limited to, information regarding sex, race, marital status, birth date, home address and telephone number, applications, testing and scoring materials, grievances, correspondence and performance evaluations, shall not be disclosed to the public without the employee's or applicant's written consent. A public official or authorized representative may inspect and copy his personnel records, except for material used to screen and test for employment.

I.C. § 9–340(36) (Supp.1995).

In its first sentence, this portion of the public records law refers to a "current or former public official." In its second sentence, it refers to a "public employee or applicant." In its third sentence, it refers again to a "public official." The term "public official" is defined in the public records law as "any state, county, local district or governmental official or employee, whether elected, appointed or hired." I.C. § 9–337(9). The term "public employee" is not defined in the public records law. Another subsection of I.C. § 9–340 indicates that the legislature understood the distinction between governmental officials who are "public officials" and public employees who are "public officials." In I.C. § 9–340(13) the legislature distinguished between "[r]etired employees" and "retired public officials." Likewise, the plain language of I.C. § 9–340(36) indicates the legislature distinguished between "public officials," which includes both "state, county, local district or governmental officials or employee," and "public employees," which is a separate category. In the first and third sentences of I.C. § 9–340(36), the legislature referred to a public official. In the second sentence, however, the legislature referred to a public employee or applicant.

From this reading of the three sentences of I.C. § 9–340(36), we conclude that the first sentence of I.C. § 9–340(36) applies only to personnel records of "a current or former public official." There is no reference in this

sentence to an applicant to be a public official. The second sentence of I.C. § 9–340(36) applies only to "a public employee or applicant." We read the term "applicant" in this sentence to refer to an applicant for a position as a public employee. Not only does the joinder of the two terms "public employee" and "applicant" indicate this, but also some of the items of personnel information listed are applicable only to an applicant for employment, not an applicant for appointment to the city council. Testing and scoring materials, grievances, and performance evaluations are examples of this type of personnel information that relates to an applicant for employment.

A member of a city council is a local governmental official, not an employee. I.C. §§ 50–701 to –704 (1994). Because the exemption from disclosure contained in I.C. § 9–340(36) does not apply to an applicant for appointment as a local governmental official, we conclude that the name and resume of an applicant to be appointed to a city council are not exempt from disclosure.

■ To the extent that any name or resume sought by the Statesman is that of a person who withdrew from consideration, or whose name and resume were submitted without their knowledge, none of the exemptions of I.C. § 9–340(36) would apply.

## III.

## THE ADMINISTRATIVE REVIEW IS NOT EXEMPT FROM DISCLOSURE.

■ The Statesman asserts that the trial court should have required disclosure of the administrative review. We agree.

If the administrative review were a personnel record, it would not be subject to disclosure under the first sentence of I.C. § 9–340(36). If the administrative review were "other personnel information" as described in the second sentence of I.C. § 9–340(36), it would be subject to disclosure only with the employee's written consent.

There is no definition of personnel records or personnel information in the public records law. Nevertheless, the legislature pro-

vides a non-exhaustive list of examples of personnel information in the second sentence of I.C. § 9–340(36). It includes information regarding sex, race, marital status, birth date, home address and telephone number, applications, testing and scoring materials, grievances, correspondence and performance evaluations. In this case we must deal not only with the general characterizations of personnel records and personnel information, but also specifically with the exemption of personnel evaluations.

Lt. Braddock, the author of the administrative review, is in charge of BPD's office of professional standards. He serves as the internal affairs investigator, coordinates responses to civil litigation, tracks liability and training issues, and reviews all BPD policies and procedures. The BPD internal affairs and discipline procedure, which Lt. Braddock used to conduct the administrative review at issue in this case, required Lt. Braddock to review the police investigation of the shooting incident for law or policy violations and for completeness. If there were a violation or more investigation to be done, then Lt. Braddock would then extend the review and investigation into "a full-blown internal affairs procedure" under BPD's internal affairs and investigation procedure. According to Lt. Braddock, the administrative review in dispute on this appeal was done pursuant to this procedure. Because Lt. Braddock found no wrongdoing, he did not continue with the full-blown internal affairs procedure.

Having reviewed the administrative review prepared by Lt. Braddock, which is under seal in our court records, we conclude that it is more a product of these duties required by Lt. Braddock's job than a review of the officers' performance in relation to its effect on their careers. Clearly, a review of the events surrounding the shooting and the applicable laws and departmental policies is not a personnel record, personnel information generally, or a personnel evaluation specifically.

Lt. Braddock's opinion concerning the involved officers' adherence to laws and policies is general in nature and is geared toward assuring the police chief that the actions of BPD did not violate any laws,

policies, or training. In fact, in the pages where Lt. Braddock evaluates the law and BPD policies and training, there is no mention of the officers' names. This distinguishes the administrative review from a typical personnel evaluation.

If Lt. Braddock had followed the administrative review with a full-blown internal affairs procedure, he would have conducted an internal investigation. If he had found wrongdoing as a result of the internal affairs investigation, he would have gone through a disciplinary procedure which would have led to a disciplinary order. A disciplinary order indicates formal disciplinary action. According to the internal affairs and discipline procedure, this disciplinary order is the only record that can go into a police officer's personnel file. If no formal disciplinary action is taken, and thus no disciplinary order written, nothing about the investigation is filed in the police officer's personnel file. This is a further indication that the administrative review is not a personnel evaluation.

■ In deciding that the administrative review must be disclosed, we are also influenced by the presumption that all public records are open unless expressly provided otherwise by statute. I.C. § 9–338(1). Therefore, we narrowly construe exemptions to the disclosure presumption. Because it is not obvious that the administrative review is a personnel record or personnel information, a narrow construction of the exemptions causes us to conclude that the administrative review is not a personnel record, personnel information generally, or a performance evaluation specifically.

In addition to arguing that the administrative review is exempt under I.C. § 9–340(36), BPD contends in the alternative that the administrative review is exempt under I.C. §§ 9–340(22) and 9–335(1)(c) (Supp.1995). Idaho Code § 9–340(22) exempts from mandatory disclosure "[i]nvestigatory records of a law enforcement agency ... under the conditions set forth in section 9–335." Idaho Code § 9–335(1)(c) provides that investigatory records are exempt from disclosure if the disclosure would "[c]onstitute an unwarranted invasion of personal privacy." We conclude that all of the information that would constitute an invasion of the officers' privacy is contained in the investigation report, which has been disclosed pursuant to the trial court's order, without an appeal to this Court. No privacy interest remains to be protected.

## IV.

## CONCLUSION

We affirm the trial court's decision that the city must disclose the names of the applicants for the city council who did not consent to the disclosure. We reverse the trial court's decision that the city is not required to disclose the resumes of the applicants for the city council who did not consent to the disclosure and the decision that the city is not required to disclose the administrative review.

We award costs on appeal to the Statesman.

McDEVITT, C.J., and TROUT, J., concur. TRANSTRUM, J. Pro Tem concurs, except at to part II.

SCHROEDER, Justice, dissenting.

I dissent from that portion of part II of the Court's opinion which holds that the résumés of the applicants are not exempt from disclosure and from that portion of part III which requires disclosure of the evaluation of the officers' conduct.

Initially it should be noted that of the five persons whose résumés will be released, four should not be considered applicants, and their personal materials should not be subject to disclosure. One withdrew his name after he discovered he lived outside the city limits. One did not submit a résumé and did not intend to apply for a vacant city council position. His résumé was submitted by another person without approval. Two who submitted résumés withdrew their names from consideration. The parties to this action have stipulated that the résumés are public records. However, the individuals actually involved are not parties, and the stipulation would not bind them in the surrender of any privacy rights they might have. To

have joined the action would have identified them, which is the thing they sought to avoid. These persons, who are not applicants, should not have their résumés disclosed.

The Court notes in dealing with these non-applicants that none of the exemptions of I.C. § 9–3401(36) would apply. That conclusion misses the threshold point. These persons' résumés are not public records. Part of the definition of a public record is that it is "any writing containing information relating to the conduct or administration of the public's business ..." I.C. § 9–337(10). There is no way that these résumés relate to conduct of the public's business, since these persons are not seeking a public position. Most notable is the person who did not submit a résumé. That person's personal information is treated by the Court as a public record as the result of the act of another person who had no authorization to submit the information in the first place. Essentially the Court's decision elevates to public record status any document that comes into the possession of a public entity, regardless of source, and irrespective of the fact that it in no way relates to the conduct of public business. The legislature has reflected an essential public policy of disclosure in the adoption of the public record's law. But the purpose of that law was to make public that which has or will relate to public business, not to breach the rights that individuals have to privacy when the details of their lives have nothing to do with the conduct of government.

The Court treats the résumés as public records. In light of this I adopt the reasoning of the district court which is set out in its memorandum filed February 28, 1994, which gives a coherent explanation consistent with the legislation.

A "public record includes, but is not limited to, any writing containing information relating to the conduct or administration of the public's business prepared, owned, used or retained by any state or local agency regardless of physical form or characteristics." I.C. § 9–337(10). The parties agree that the list of council applicants and their résumés maintained by the City of Boise come within the definition of a public record.

There is a general right to examine and copy a public record. I.C. § 9–338(1). A court may not uphold non-disclosure of a public record merely because the agency obtained the information in the record in confidence or because disclosure would be against the best interests of the state or because disclosure would interfere with the public interest in having public business carried on efficiently and without undue interference. *Dalton v. Idaho Dairy Products Commission,* 107 Idaho 6, 684 P.2d 983 (1984) (interpreting a statute subsequently repealed). A court may uphold non-disclosure only when "expressly provided by statute." I.C. § 9–338(1).

The city contends that the requested information is exempt from disclosure under I.C. § 9–340(36), which provides

9–340 **Records exempt from disclosure.**—The following records are exempt from disclosure:

\* \* \* \* \* \*

(36) Except as provided in this subsection, all personnel records of a current or former public official other than the public official's public service or employment history, classification, pay grade and step, longevity, gross salary and salary history, status, workplace and employing agency. All other personnel information relating to a public employee or applicant, including, but not limited to, information regarding sex, race, marital status, birthdate, home address and telephone number, applications, testing and scoring materials, grievances, correspondence and performance evaluations shall not be disclosed to the public without the employee's or applicant's written consent. A public official or authorized representative may inspect and copy his personnel records, except for material used to screen and test for employment.

A "public official" is defined as "any state, county, local district or governmental *official or employee,* whether elected, appointed or hired." I.C. § 9–337(9) (emphasis supplied). A "public employee" is not specifically defined. Nevertheless in the context in which it is used,

public employee appears to be synonymous with the defined term "public official." "Official" is referred to three times and "employee" is referred to twice in the exemption statute without any apparent differentiation. If the legislature intended to give a special meaning to public employee that is different than the meaning of public official, it would have provided such a definition, as it did with many other terms in the Public Writings Chapter. See, I.C. Section 9–337.

In any event it is clear that the legislature recognized that public employment does not totally divest a public official of the privacy rights enjoyed by citizens not in public employment. By exempting certain aspects of personnel records from public disclosure, the legislature attempted to achieve a logical and rational balance between the public's right to know and a public official's right to privacy.

Among the matters exempted from public disclosure in public official personnel records are employment "applications." Typically, but not invariably, the employment application process includes preparation and submission of a résumé. In this case, the invitation to interested persons to apply included a specific direction to submit a résumé; for all practical purposes the résumé was the application. Consequently, the exemption applies, and the Statesman is not entitled to obtain the résumés without permission from the applicants.

The names of the applicants, however, are different matters. The personnel records exemption is not absolute. It does not exempt from disclosure such items as "public service or employment history, classification, pay grade and step, longevity, gross salary and salary history, status, workplace and employing agency." For personnel information that is subject to disclosure to have any meaning at all, the name of the involved officials and applicants also must be disclosed. The names of applicants for public employment are not protected from disclosure; the city must disclose its list of applicants for the city council vacancies regardless of permission from the applicants.

It has been suggested that the exemption statute should have no application whatsoever, since its literal terms apply only to "personnel records of a current or former public official", and none of the persons withholding consent are current or former public officials. Nevertheless, the exemption prohibits disclosure "without the employee's or *applicant's* written consent." The plain meaning of the statute is to provide a modicum of privacy both to persons obtaining public employment and to persons who fail to obtain public employment.

## PART III

Those portions of the administrative review that evaluate the conduct of the officers in light of their training, department policies, the law and the circumstances of the case should be exempt from disclosure under section 9–340(36) as performance evaluations. This is a typical employee performance evaluation when there has been an extraordinary event. It outlines the facts, the policies of the department, the law, and then assesses the conduct of the officers in light of those facts and policies. The fact that non-exempt material is included is irrelevant to a determination that the assessment is a personnel evaluation. The non-exempt material—the law, Boise Police Department's (BPD) policies, and BPD training—is subject to disclosure. The facts surrounding the event were properly disclosed as part of the police reports. What remains is a personnel evaluation of the officers involved.

There is a significant reason to conduct such reviews: 1) they establish a framework to determine if disciplinary action should take place; 2) they establish a framework to determine if the training within the department is adequate for future situations. It is essential to outline the policies to evaluate the employee conduct. Disclosure of those policies is required, but evaluation of the employees' conduct is exempt under I.C. § 9–340(36). It must be emphasized that the actions of the officers were disclosed, so nothing about policy or fact has been kept from the public.

There is great value to the public in such reviews being conducted in order to assess 1) whether the particular officers are acting within the proper bounds of their training; and 2) to determine if the policies and training of the department are adequate. Confidentiality of the personnel evaluations will likely lead to an honest assessment of the conduct of the officers in relation to the policies of the department and their training. Disclosure will more likely lead departments to do non-critical, whitewash reports, that cannot be used against them. In light of the Court's decision it is less likely that departments will conduct the critical evaluations that are essential to improvement of operations.

The question must be addressed as to whether there is danger to the public by protecting these personnel evaluations. There are protections: 1) the facts of the event are already known; 2) the policies of the department are public; 3) an *in camera* inspection by an impartial judge protects against cover-up. The public and the press are free to draw their own conclusions as to the propriety of the officers' conduct. If protected by confidentiality, the personnel evaluation will be free to be favorable or critical without the evaluation turning into a public-relations vehicle or a defense to civil lawsuit.

There is no great warpage to the law by the Court's decision, because it simply says that the administrative review is not a personnel evaluation, premised on the fact that almost all of the review consists of non-exempt material. But the Court does not recognize that such material is essential to frame a context to make a personnel evaluation. Jobs don't exist in a vacuum. Evaluations must take place within a framework. The fact that the framework is outlined as a part of the review should not destroy the exempt status of the personnel evaluation that occurs within that framework. In short, most of the administrative review is not exempt and should be disclosed—the law, policies, training, and facts—but the evaluation of the officers' conduct within that context should not be disclosed, because it is an exempt personnel evaluation under I.C. § 9–340(36).

TRANSTRUM, J. Pro Tem, concurs, as to dissent from part II.