# IN THE SUPREME COURT OF THE STATE OF IDAHO

| | |
|---|---|
| COWLES PUBLISHING COMPANY, a Washington corporation, | ) ) ) |
| Petitioner-Respondent-Cross Appellant, | ) ) ) |
| v. | ) ) |
| THE KOOTENAI COUNTY BOARD OF COUNTY COMMISSIONERS, | ) Docket No. 32195 ) ) ) |
| Respondent, | ) ) Coeur d'Alene, April 2007 ) |
| and | ) 2007 Opinion No. 74 ) |
| WILLIAM DOUGLAS, | ) Filed: May 4, 2007 ) |
| Intervener, | ) Stephen W. Kenyon, Clerk |
| and | ) ) |
| IDAHO COUNTIES RISK MANAGEMENT PROGRAM UNDERWRITERS, | ) ) ) |
| Intervener-Cross Respondent, | ) ) |
| and | ) ) |
| MARINA P. KALINI, | ) ) |
| Intervener. | ) ) |
| COWLES PUBLISHING COMPANY, a Washington corporation, | ) ) ) |
| Petitioner-Respondent-Cross Appellant, | ) ) ) |
| v. | ) Docket No. 32206 ) |
| THE KOOTENAI COUNTY BOARD OF COUNTY COMMISSIONERS, | ) ) ) |
| Respondent, | ) ) |

**and** )
)
**WILLIAM J. DOUGLAS,** )
)
    **Intervener,** )
)
**and** )
)
**IDAHO COUNTIES RISK MANAGEMENT** )
**PROGRAM UNDERWRITERS,** )
)
    **Intervener-Cross Respondent.** )
)
**and** )
)
**MARINA P. KALANI,** )
)
    **Intervener-Appellant.** )

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Honorable John R. Stegner, District Judge.

The district court's order granting Cowles's petition for access to public records is <u>affirmed</u> and the district court's permanent protective order sealing the settlement agreement is <u>affirmed</u>.

Witherspoon, Kelley, Davenport & Toole, P.S., Coeur d' Alene and Spokane, WA., for appellant Cowles Publishing in case number 32195.

Gregory D. Horne, Coeur d'Alene, argued for appellant in case 32206.

Anderson, Julian & Hull, LLP, Boise, for respondents in case 32195. Phillip J. Collaer argued.

Witherspoon, Kelley, Davenport & Toole, P.S., for respondents in 32206. Tracy N. LeRoy argued.

---

BURDICK, Justice

Marina P. Kalani appeals from the district court decision holding that certain email correspondence between Kalani and William Douglas were public records and not exempt from disclosure. Cowles Publishing Company cross-appeals from a protective order permanently sealing the settlement agreement between Idaho Counties Risk Management Program Underwriters and Kalani. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves events surrounding the demise of the Juvenile Education and Training Court (JET Court) in early 2005 in Kootenai County. The JET Court was funded through a U.S. Department of Justice grant to Kootenai County and overseen by the county prosecutor, but after the JET Court failed to provide a quarterly report on its finances, access to those funds was temporarily suspended. The JET Court was then terminated. At the time of these events Kalani was the JET Court manager and her supervisor was Kootenai County Prosecutor William Douglas. Douglas hired Kalani in March 2004. When the funding problems became known to the public, Douglas defended Kalani and her management of the program; additionally, he decided to continue the program out of County funds, including Kalani's salary. The Kootenai County Board of Commissioners started an investigation into the JET Court program finances.

Meanwhile, the local press began printing allegations of an alleged improper relationship between Douglas and Kalani. They both denied these allegations. Additionally, as the press reported on the demise of the JET Court, the Spokesman Review quoted J.T. Taylor, the manager of the juvenile detention facility, as saying the issues around the JET Court revolve around "the 'inappropriate, unprofessional and unethical' conduct of Kalani and that she has 'significant character issues and questionable practices.'" Douglas responded to this allegation in a memorandum to Commissioner Rick Currie, calling Taylor's statements highly inappropriate and an unfair disparagement of the "character and reputation of a dedicated and professional member of [Douglas's] staff." Kalani eventually resigned as JET Court manager, and Douglas continued to defend her in the press.

Against this background, a reporter for the Spokesman Review made a public records request to the Kootenai County Board of Commissioners for all the email correspondence between Kalani and Douglas. The Kootenai County Board of Commissioners requested that Idaho Counties Risk Management Program Underwriters (ICRMP), its insurer, handle the request. The County then identified in a log over one thousand emails sent between Kalani and Douglas from February 17, 2004, to February 15, 2005, contained on Kootenai County's email system, produced 172 emails in full and information from 287 redacted emails, and withheld 597 emails. Cowles Publishing (the publisher of the Spokesman Review), then filed a Petition for Access to Public Records. The district court held that the emails were public record subject to disclosure. Kalani appeals this determination.

3

During the course of the litigation over the emails, several newspaper articles were published reporting that Kalani had settled a claim against Kootenai County through its insurer, ICRMP. Cowles had filed a public records request for the settlement agreement. ICRMP responded that it had made a $69,146.20 payment to Kalani. Then in its briefing to the district court, ICRMP stated that Kalani had a potential defamation claim against the County. During a hearing on the Petition for access to the emails, the district court became concerned that the amount of the settlement reported in the newspaper articles differed from the amount disclosed by the parties at hearing and in documents before the district court. Counsel for Douglas had provided the court with a copy of the settlement agreement. ICRMP intervened, seeking to preserve the confidentiality of the settlement agreement. The court issued a temporary protective order, and then issued a protective order permanently sealing the settlement agreement. Cowles cross-appeals this determination.

## II. ANALYSIS

This case raises two distinct issues: whether the district court erred by determining the emails between Kalani and Douglas were subject to public disclosure under our public records law, I.C. §§ 9-301 – 9-350 (the Act), and whether the district court erred by permanently sealing the settlement agreement between ICRMP and Kalani. We will turn first to the disclosure issue, and then address the sealing issue. Finally, we will review Cowles' request for attorney fees.

**A. The district court did not err when it determined the emails between Kalani and Douglas were public records.**

Kalani argues the district court erred when it determined that the emails between her and Douglas were public records. She asserts that these emails are not public records, but if they are, then they are exempt from disclosure under the Act. Finally, she argues that even if the emails are public records and are not exempt, she has a constitutional right to privacy which prevents the disclosure of the emails. We will address each part of her argument in turn.

The Act provides: "Every person has a right to examine and take a copy of any public record of this state and there is a presumption that all public records in Idaho are open at all reasonable times for inspection except as otherwise expressly provided by statute." I.C. § 9-338(1). This Court presumes that all public records are open for examination unless expressly exempted by statute. *Magic Valley Newsps, Inc. v. Magic Valley Regl. Med. Ctr.*, 138 Idaho 143, 144, 59 P.3d 314, 315 (2002); *Federated Publications, Inc. v. Boise City*, 128 Idaho 459, 463,

4

915 P.2d 21, 25 (1996) (citing I.C. § 9-338(1)).  As a threshold matter, then, this Court must determine whether the emails at issue are "public records" under the Act.[1]

"The interpretation of a statute is a question of law over which we exercise free review." *Magic Valley Newsps., Inc.*, 138 Idaho at 144, 59 P.3d at 315 (citing *Lopez v. State, Indus. Spec. Indem. Fund*, 136 Idaho 174, 30 P.3d 952 (2001)).  "Interpretation of a statute begins with an examination of the statute's literal words." *Idaho Conserv. League, Inc. v. Idaho State Dept. of Agric.*, 143 Idaho 366, __, 146 P.3d 632, 634 (2006) (citing *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999)).  "Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction."  *Id.* (citing *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999)).

   1. <u>Public records</u>

Kalani argues that the definition of a public record encompasses only records of official government business; thus, she argues, since the emails at issue are personal emails, they do not constitute public records under the Act.  Cowles argues that since these emails were officially reviewed, were the basis for official action and contain information relating to the conduct of the public's business, they are public records.

A public record "includes, but is not limited to, any writing containing information relating to the conduct or administration of the public's business prepared, owned, used *or* retained by any state agency, independent public body corporate and politic or local agency regardless of physical form or characteristics."  I.C. § 9-337(13) (emphasis added).[2]  Thus, a record may be a public record if it is a writing that (1) contains information relating to the conduct or administration of the public's business, *and* (2) was prepared, owned, used or retained by a governmental agency.  *Id.*  However, our legislature has broadly defined public records; other records and writings may qualify even if they do not meet this definition.  *See id.*

Turning to the first portion of this definition, it is clear that the emails contain information relating to the conduct and administration of the public's business.  The public has a legitimate interest in these communications between this elected official and the employee whom

---

[1] Cowles does not challenge Kootenai County's decision to withhold emails containing information regarding juveniles or emails containing health information.  It is the remaining emails that were either withheld or redacted in part which Cowles seeks to have disclosed.

[2] The Public Records Act was amended in 2006.  2006 Idaho Sess. Laws, ch. 352, § 1.  This subsection was formerly numbered I.C. § 9-337[(12)](11).

he hired and supervised because when the JET Court's financial problems and eventual demise became apparent to the public, Douglas defended Kalani's management to both the Board and the public. Whether he did so as her supervisor defending her job performance, or whether he did so because of an alleged inappropriate relationship is a public concern. Put another way, Douglas's reasons for defending Kalani relate to the conduct and administration of the public's business. Likewise, ICRMP, the County's insurer who examined the emails in relation to Cowles's public record request, settled a potential defamation claim brought by Kalani against the County. The email's content relates to the public's business because the public's business includes job performance by a county employee, the spending policies of a county program, the issues surrounding that program's demise, other employment related claims, and the validity and circumstances surrounding the defamation claim.

Turning now to the second portion of the definition—"prepared, owned, used *or* retained by a governmental agency"—the emails also meet this prong of the definition. Because this portion of the definition contains the disjunctive conjunction "or" it is not necessary for a writing to meet every test given in this portion of the definition. Here, the emails were prepared, used and owned by the County. Douglas and Kalani, county employees, prepared and sent the emails. The emails were also used by Commissioner Johnson in his investigation into the JET Court. Additionally, the emails were owned by the County. The County's email policy makes it clear that the email software provided to Douglas and Kalani was county property. As such because the emails were prepared by county employees, sent between county employees, and used in an investigation by a county commissioner and owned by the county, they meet the second prong of I.C. § 9-337(13). [3]

---

[3] While the emails meet the definition set forth by the legislature in I.C. § 9-337(13), Kalani argues that to interpret this statute as including emails between a county prosecutor and a member of a juvenile drug court would be unconstitutional. She asserts that both a prosecutor and a member of the JET court are members of the judicial branch, and allowing the emails to become public would be tantamount to allowing the legislative branch to supervise members of the drug court—a violation of the separations of power doctrine. However, Kalani did not raise this issue below and the district court did not consider it.

"It is beyond question that this Court will not consider issues raised for the first time on appeal." *AIA Servs. Corp. v. Idaho State Tax Commn.*, 136 Idaho 184, 188, 30 P.3d 962, 966 (2001) (citing *Post Falls Trailer Park v. Fredekind*, 131 Idaho 634, 637, 962 P.2d 1018, 1021 (1998)). This includes constitutional issues raised for the first time on appeal. *Northcutt v. Sun Valley Co.*, 117 Idaho 351, 356, 787 P.2d 1159, 1164 (1990) (citing *Bogert v. Kinzer*, 93 Idaho 515, 517, 465 P.2d 639, 641 (1970)). As such, the separation of powers issue is not properly before this Court, and we will not consider it.

Therefore, these emails are public records pursuant to I.C. § 9-338(13); they relate to the public's business and were prepared, owned and used by the County. Since the emails are public records, we must now determine whether they are exempt from disclosure, either because of a statute or a constitutional right to privacy.

However, before turning our analysis to whether the emails are statutorily exempt from disclosure, it is important to emphasize that the emails at issue are part of a series of on-going correspondence between two county employees—the county prosecutor and his subordinate. They are not isolated emails sent into the county email system by someone unrelated to the business of the county. Although Kalani insists that they no more relate to the public's business than a letter she may have brought to work with her and left in her desk or to emails between her and a non-employee, it is disingenuous to draw analogies between this series of correspondence being sent between two county employees, prepared on county owned equipment and software, and incoming emails over which an employee has no control or personal mail simply in a government office because the employee brought personal mail to work. These emails were between two government employees, created and sent using government resources, and it was the employees' conduct—Douglas's public defense of Kalani and Kalani's supervision of the failed JET Court—that put these emails within the purview of the public's business. Moreover, Commissioner Johnson used the emails when investigating the financial problems and demise of the JET Court. It is not simply the fact that the emails were sent and received while the employees were at work or the fact that they were "in" the employee's office that makes them a public record. Rather, it is their relation to legitimate public interest that makes them a public record.

### 2. Statutory Exemption

Kalani argues that even if the emails are public records, they are statutorily exempt from disclosure as personnel records pursuant to I.C. § 9-340C(1). This exemption, she asserts, should cover both formal and informal communications between an employee and supervisor that bear upon the employee's job performance or conditions of the workplace. Cowles argues that the Court should determine the emails are not exempt from disclosure because our law favors disclosure and because such a decision would more closely comport with prior case law dealing with this statutory exception.

Idaho Code § 9-340C provides, in pertinent part:

7

The following records are exempt from disclosure:

(1) Except as provided in this subsection, all personnel records of a current or former public official other than the public official's public service or employment history, classification, pay grade and step, longevity, gross salary and salary history, status, workplace and employing agency.  All other personnel information relating to a public employee or applicant including, but not limited to, information regarding sex, race, marital status, birth date, home address and telephone number, applications, testing and scoring materials, grievances, correspondence and performance evaluations, shall not be disclosed to the public without the employee's or applicant's written consent. . . .

I.C. § 9-340C(1).

Personnel records, other than those listed in I.C. § 9-340C(1), are exempt from disclosure. *Magic Valley Newsps., Inc.*, 138 Idaho at 145, 59 P.3d at 316.  The Act does not define personnel records. *Federated Publications, Inc.*, 128 Idaho at 462, 915 P.2d at 24. However, the legislature provided a non-exhaustive list of examples of the types of personnel records exempt from disclosure. *Id*.  When determining whether a record is a personnel record, this Court presumes that all public records are open to disclosure and that all exemptions are narrowly construed. *Id*. at 463, 915 P.2d at 25.  If a record is not obviously a personnel record, this Court should hold that it is subject to disclosure. *Id*.

Although the emails may be a form of correspondence, they are not the type of correspondence the legislature meant to exempt in I.C. § 9-340C(1).  Instead, by looking at the term correspondence in context, it becomes clear that the legislature meant to exempt only those types of correspondence typically found in a personnel file—for instance, a letter of recommendation, formal correspondence between a superior and employee, or a letter commenting favorably or disfavorably on an employee's professional conduct.  To accept the broad interpretation urged by Kalani would render an entire category of public records exempt from disclosure.  Moreover, these emails are not obviously personnel records.  Simply put, the emails between Kalani and Douglas are not personnel correspondence and therefore are not exempt from disclosure.  Rather, they are informal communications between an employee and her supervisor, unrelated to personnel administration.  Therefore, under the narrow definition for exemptions in I.C. § 9-340C(1) we hold that these emails are not statutorily exempt from disclosure.

3. <u>Constitutional right to privacy</u>

Kalani argues that disclosure of the emails would violate her constitutional right to privacy. Cowles contends that the right to privacy does not extend to cover emails between an employee and supervisor, generated and received at a public workplace.

The Federal Constitution protects a "zone of privacy." *Whalen v. Roe*, 429 U.S. 589, 598 (1977).[4] This includes an individual's interest in having certain personal matters remain private. *Id*. at 599. However, the exact contours of this zone of privacy are not well established, and it is an issue of first impression for this Court as to whether the emails at issue would be included in the "zone of privacy" protected by the Federal Constitution.

Assuming *arguendo* that there is a constitutional right to privacy in these emails because the emails are highly personal and sensitive or detail intimate aspects of Kalani's personal and private life, Kalani had no *reasonable* expectation of privacy in them. The County's email policy, signed by Kalani, states: "Employees have no right to personal privacy when using the email system(s) provided by the County." The policy also made it clear that the emails were considered a public record and were subject to disclosure, that the use of the internet would be logged, and that the County could monitor emails. Therefore, under the clear wording of the County's emails policy Kalani had no legitimate expectation of privacy in the emails.

Thus, because the emails at issue are public records subject to neither a statutory or constitutional exemption from disclosure, we affirm the district court order finding that the emails are public records.

**B. The district court did not err by permanently sealing the settlement agreement.**

Cowles and ICRMP agree that the settlement agreement between Kalani and IRCMP is a public record; however, they disagree as to whether it was error for the district court to permanently seal it. Cowles argues that the district court erred when it sealed the settlement agreement. The settlement agreement, Cowles contends, is not exempt from disclosure under I.C. § 9-340D(11). ICRMP argues that the district court correctly sealed the settlement agreement because it is exempt from disclosure.

Idaho Code § 9-340D provides, in pertinent part:

---

[4] Kalani argues that the Idaho Constitution contemplates a right to privacy based on *State v. Holden*, 126 Idaho 755, 890 P.2d 341 (1995). However, that case only discusses the Federal Constitution. As such, she fails to support her argument that the Idaho Constitution provides a right to privacy in the emails.

The following records are exempt from disclosure:

. . .

Records of any risk retention or self-insurance program prepared in anticipation of litigation or for analysis of or settlement of potential or actual money damage claims against a public entity and its employees or against the industrial special indemnity fund except as otherwise discoverable under the Idaho or federal rules of civil procedure. These records shall include, but are not limited to, claims evaluations, investigatory records, computerized reports of losses, case reserves, internal documents and correspondence relating thereto. *At the time any claim is concluded, only statistical data and actual amounts paid in settlement shall be deemed a public record unless otherwise ordered to be sealed by a court of competent jurisdiction.* Provided however, nothing in this subsection is intended to limit the attorney client privilege or attorney work product privilege otherwise available to any public agency or independent public body corporate and politic.

I.C. § 9-340D(11) (emphasis added).

The settlement agreement was executed in order to conclude any potential claims between Kalani and Kootenai County. As such, under the plain language of I.C. § 9-340D(11) only the statistical data and actual amount paid are public records.[5] Any other information contained in the settlement agreement or other records relating to Kalani's claim are exempt from disclosure. *Id.* Therefore, we affirm the district court's order granting ICRMP a permanent protective order for the purpose of sealing the settlement agreement.

## C. Attorneys Fees

In the last line of its response brief and its reply brief, Cowles "requests that the Court award it attorney fees and costs." However, Cowles neglected to support this request with either authority or argument. "[The Court has] repeatedly held that we will not consider a request for attorney fees on appeal that is not supported by legal authority or argument." *VFP VC v. Dakota Co.*, 141 Idaho 326, 337-38 109 P.3d 714, 725-26 (2005) (quoting *Robbins v. County of Blaine*, 134 Idaho 113, 996 P.2d 813 (2000)). As such, this Court will not award Cowles attorney's fees.

---

[5] Cowles argues that ICRMP waived the right to have the settlement agreement remain confidential when it identified the claimant, Kalani. However, as ICRMP points out, the way Cowles's request for the agreement was structured necessarily required ICRMP to identify that the settlement agreement related to Kalani. Cowles requested: "Any/all settlement agreements between former Kootenai County [JET] Court coordinator Marina Kalani. . . and/or ICRIMP and/or Kootenai County. Please include the settlement amount and reason for settlement." Waiver requires a voluntary, intentional relinquishment of a known right that is relied upon by an adverse party and which alters their position. *Brand S. Corp. v. King*, 102 Idaho 731, 734, 639 P.2d 429, 432 (1981) (citations omitted). Therefore, ICRMP did not waive its right to have the contents of the agreement remain confidential.

10

### III. CONCLUSION

We affirm the district court's order granting Cowles's petition for access to public records.  The emails are public records and are not exempt from disclosure under either statutory exemptions or constitutional law.  We also affirm the district court's permanent protective order sealing the settlement agreement.  We decline to award attorneys fees to Cowles.  Costs to Respondent.

Chief Justice SCHROEDER  and Justices TROUT, EISMANN and JONES, **CONCUR.**