JONES, J.,
concurring in part and dissenting in part.
I concur in the Court’s opinion, save the conclusion in Part III.A.1. that the litigation exception in the Open Meeting Law (Idaho Code §§ 67-2340, et seq.) does not require the presence of legal counsel. I dissent from that conclusion because the language employed in the litigation exception does not admit to just one plausible interpretation and when the exception is construed in the light of legislative history and public policy it is clear that it was intended to narrowly apply to attorney-client communications regarding ongoing or anticipated litigation.
The language at issue in I.C. § 67-2345(l)(f) (2006) seems fairly straightforward on an initial reading. It allows for an executive session of a governing body “[t]o consider and advise its legal representatives in pending litigation or where there is a general public awareness of probable litigation.” The provision contemplates give and take *480 between the governing body and its counsel regarding pending or threatened litigation. The language indicates the exception applies to a unitary process where the governing body receives legal advice on the litigation from its attorney and gives instructions on how to proceed. “Consider” and “advise” are not only bound together by an “and,” but also by consideration of how things work in an attorney-client relationship.
The district court appears to have read the litigation exception in this manner, determining as follows:
In reading the statute as a whole, including all of the authorizing circumstances set forth in section 2345, it is clear that (l)(f) can be exercised only when a governing body is meeting with its legal counsel to discuss pending litigation or probable litigation about which there is general public awareness. That interpretation does not require presence of counsel at all meetings, nor does it require counsel to be at meetings whenever there are meetings at which conflicts are discussed. But, it does require counsel’s presence when the governing body wants to go into executive session to discuss matters which traditionally would be privileged communications or would be considered work product. Contrary to Defendants argument, this requirement does not burden governing bodies in small communities or governing bodies that may not have regular access to counsel. It simply means that when they wish to invoke (l)(f) and go into executive session, they must do so only to discuss pending or future litigation with their legal representative. That exception is limited to when counsel is present (and could be present telephonically) but even then, the executive session is only to discuss pending or probable litigation about which there is a general public awareness. This interpretation is consistent with the purpose of the Idaho Open Meeting Law and apparent from the plain reading of that provision.
Thus, the district court found the litigation exception language to be unambiguous, to be designed to protect attorney-client communications, and to necessarily require the presence of legal counsel in order to be invoked. I agree with that reading.
However, I would certainly concede that the language employed in the litigation exception is somewhat awkward when subjected to word-by-word microscopic scrutiny. Where I would read “consider and advice” as acts to be performed in tandem with the presence of legal counsel, the Court reads them to be acts that can be performed separately — the consideration to be allowable with or without the presence of legal counsel so that only the advising of legal representatives requires their presence at an executive session. While I prefer the reading advanced by the attorney general and adopted by the district court, I would concede that the Court has put forth a plausible reading of the statute. Indeed, three different readings of the statutory language were presented to the Court by the parties and amicus. Although the amicus reading is somewhat questionable in my opinion, it appears that my reading and the reading of the Court are both plausible and reasonable. Thus, I would find the statutory language to be ambiguous and employ the rules of statutory construction to determine the legislative intent. “If it is necessary for this Court to interpret a statute, the Court will attempt to ascertain legislative intent, and in construing a statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute.” Gillihan v. Gump, 140 Idaho 264, 266, 92 P.3d 514, 516 (2004). In determining the meaning of a statute the “overall scheme and intent of- the legislation must not be overlooked.” Idaho State Tax Comm’n v. Haener Bros., Inc., 121 Idaho 741, 744, 828 P.2d 304, 307 (1992).
We start with the proposition of openness in government. The framers of the Idaho Constitution wanted proceedings of the State Legislature to be conducted in public view. As one delegate put it, “I want the electric light of publicity turned upon every act that they do.” II Proceedings and Debates of the Constitutional Convention of Idaho 1889, 1217 (I.W. Hart ed. 1912) (State of Del. A.F. Parker). There is no reason to believe that the constitutional framers would have ex *481 pected less of county and city governments. Indeed, the Legislature has provided for openness, both with regard to meetings of governmental bodies and records of those bodies. Idaho Code § 9-338 presumes that all public records in Idaho are open for inspection by the public. This Court presumes that all public records are open to disclosure and that all exemptions are narrowly construed. Federated Publications, Inc. v. Boise City, 128 Idaho 459, 463, 915 P.2d 21, 25 (1996).
In Idaho Code § 67-2340, the Legislature “finds and declares that it is the policy of this state that the formation of public policy is public business and shall not be conducted in secret.” The Legislature implemented this policy mandate through Idaho Code § 67-2342(1), which requires all meetings of a governing body of a public agency to be open, with certain specified exceptions for executive sessions. Gardner v. Evans, 110 Idaho 925, 929, 719 P.2d 1185, 1189 (1986). The exceptions for executive sessions should, like exceptions for the public records law, be narrowly construed. See Norman J. Singer, Sutherland Statutes and Statutory Construction, § 47:11 (6th Ed.2002) (“where a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than the exceptions”).
With regard specifically to counties, the Legislature has provided in Title 31, the code title pertaining to counties and county law, that all meetings of a board of county commissioners “must be public.” Idaho Code § 31-710(4). The Legislature provides for no exceptions in the county law. In 1985 the Court of Appeals found a clear and definite conflict between this provision and the executive session provisions of I.C. § 67-2345, holding that the latter govern because it was the later-enacted. Nelson v. Boundary County, 109 Idaho 205, 208, 706 P.2d 94, 97 (Ct.App.1985). This Court has not had occasion to rule on this particular issue and it is not necessary to do so at this time in light of the legislative history, which indicates that the litigation exception was not intended to apply in the circumstances of this case. What is important to draw from the county law is the strong public policy in favor of open public meetings of county commissions.
The Open Meeting Law was enacted in 1974 “to provide for more open meetings of governing bodies in Idaho” and to combat the attitude of many governing bodies “that the public’s business is none of the public’s business.” H.B. 602, Statement of Purpose, 42nd Leg. 2nd Sess. (Idaho 1974). As enacted in 1974, the legislation did not contain a litigation exception. 1974 Idaho Sess. Laws, Ch. 187, p. 1492. In 1978, the Legislature enacted H.B. 582, which established the litigation exception in subsection (l)(f) to “allow governing bodies to go into executive session to consider and advise its legal representatives on pending litigation.” H.B. 582, Statement of Purpose, 44th Leg., 2nd Sess. (Idaho 1978); 1978 Idaho Sess. Laws, Ch. 302, p. 759. The legislative history is instructive. Representative Ingram was the sponsor of the legislation, which was proposed by the Association of Idaho Cities. According to the record developed in the House State Affairs Committee when the legislation was first considered:
Rep. Ingram spoke to the committee on this proposed legislation and said this amendment would allow governing bodies like city councils and county commissioners, etc., to go into executive session to consider and advise its legal representatives on pending litigation. He said the Association of Idaho Cities had asked that he bring this to committee since he was the author of the original meeting law. Mr. Marty Peterson from the Association of Idaho Cities spoke to the committee and said this amendment will allow city councils to meet with legal counsel in matters concerning litigation in an attorney-client relationship.
Rep. Winchester felt we have a good opening meeting law already and the wordage in this bill would allow the public to be shut out of the meetings. He felt this was contrary to the open meeting law. Rep. Ingram said he had been a little concerned about the wordage himself, however, when a suit had been filed he felt it would be *482 legitimate for a governing body to meet with their attorney. He asked Mr. Peterson if his association would object to a change. Mr. Peterson said they would prefer the bill go through in its present form. He said it was their understanding that unless a suit had actually been filed and was proceeding through the court system, the open meeting law would not allow the retention of an attorney-client relationship.
Hearing on RS 3U38 [H.B. 582] before the House State Affairs Committee, 44th Leg., 2nd Sess., pp. 2-3 (Idaho Feb. 21, 1978). Thus, the entity requesting the legislation and the legislative sponsor intended to allow governing bodies “to meet with legal counsel in matters concerning litigation in an attorney-client relationship.” With no exception for confidential attorney-client communications in the 1974 enactment, the governing body and its attorney would have had to discuss litigation strategy in open session, thereby defeating the attorney-client privilege. The 1978 amendment was designed specifically to keep the attorney-client exchange confidential. It should not be more broadly construed.
Although this case has been somewhat mooted by the Legislature’s 2007 amendment of I.C. § 67-2345(1)©, it is worthwhile to make mention of the long-standing policy in Idaho of maintaining openness in government. That requires narrow construction of any exception to the openness rule, including openness at meetings of governing bodies. Thus, while I support the Court’s opinion in all other respects, I dissent with regard to the conclusion in part III.A.l. and would affirm the district court’s ruling on that issue.