688 S.E.2d 317

## The ASSOCIATED PRESS, Plaintiff Below, Appellant,

v.

## Steven D. CANTERBURY, Administrative Director of the West Virginia Supreme Court of Appeals, Defendant Below, Appellee.

No. 34768.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 2009.

Decided Nov. 12, 2009.

Concurring and Dissenting Opinion of Justice Workman
Nov. 18, 2009.

<hr>

Rudolph L. DiTrapano, Sean P. McGinley, DiTrapano, Barrett & DiPiero, Charleston, WV, Patrick C. McGinley, Law Office of Patrick C. McGinley, Morgantown, WV, for Appellant.

Carte P. Goodwin, Goodwin & Goodwin, Charleston, WV, for Amicus, WV Judicial Assoc.

Terris S. Baur, ACLU of West Virginia Foundation, Charleston, WV, for the Amici, The Reporters Committee for Freedom of the Press, ACLU of WV, Assoc. of Capitol Reports & Editors, The Radio & Television News Directors Assoc., The Society of Professional Journalists and WV Press Assoc.

Ancil G. Ramey, William D. Wilmoth, Steptoe & Johnson, Charleston & Robert P. Fitzsimmons, Fitzsimmons Law Offices, Wheeling, WV, Daniel J. Guida, Law Office of Daniel J. Guida, Weirton, WV, for Appellee.

DAVIS, Justice:

The Associated Press, plaintiff below (hereinafter referred to as "the AP"), appeals from an order of the Circuit Court of Kanawha County denying part of the AP's request for injunctive relief against Steven D. Canterbury, Administrative Director of the West Virginia Supreme Court of Appeals, defendant below (hereinafter referred to as "Mr. Canterbury"). Specifically, the AP alleges the circuit court committed error in ordering Mr. Canterbury to turn over only five of thirteen e-mail communications it sought under the West Virginia Freedom of Information Act (hereinafter referred to as "FOIA").[1] Mr. Canterbury has filed a cross-appeal alleging that the circuit court committed error in finding that five of the thirteen e-mails were subject to disclosure under FOIA. After a thorough review of the briefs and record, and having listened to the arguments of the parties, we affirm that part of the circuit court's order which denied disclosure of eight of the e-mails. Additionally, we reverse that part of the order which required disclosure of the remaining five e-mails.[2] Finally, we remand this case to the trial court for further disposition consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts of this case are rather simple and straightforward. On February 29, 2008, the AP submitted a FOIA request to Mr. Canterbury.[3] The FOIA request sought all records reflecting communication between Justice Elliot E. Maynard[4] and Donald L. Blankenship[5] during the period beginning January 1, 2006, through February 2008.[6] Mr. Canterbury denied the AP's request on

1. *See* W. Va.Code § 29B–1–1, *et seq.*

2. We wish to acknowledge the contributions from the briefs submitted by the Amici Curiae. An amicus curiae brief supporting Mr. Canterbury's position was filed by the West Virginia Judicial Association. An amicus curiae brief supporting the AP's position was filed on behalf of The Reporters Committee for Freedom of the Press, The American Civil Liberties Union of West Virginia, The Association of Capitol Reporters and Editors, The Radio and Television News Directors Association, The Society of Professional Journalists, and The West Virginia Press Association. We value the participation of these organizations and the helpful insights their briefs lend to the parties' arguments.

3. The AP had submitted an earlier, broadly-worded, FOIA request on January 16, 2008, which was denied by Mr. Canterbury. That request is not the subject of this appeal.

4. Justice Maynard was defeated in his bid for re-election in 2008.

5. Mr. Blankenship is the CEO of Massey Energy Company.

6. The FOIA request also sought all communications that were made between Mr. Blankenship

the ground that any such communication was not subject to disclosure under FOIA. Thereafter, on April 29, 2008, the AP filed a complaint in circuit court seeking declaratory and injunctive relief.[7]

In June of 2008, the circuit court held an evidentiary hearing. During the hearing, Mr. Canterbury testified to the existence of the electronic mail (hereinafter referred to as "e-mail") communications that covered the period under the AP's FOIA request. The circuit court ordered the e-mails be produced for an *in camera* review. Subsequent to its in camera review of the e-mails, the circuit court entered a final order on September 16, 2008. In that order, the circuit court found that five of the e-mails involved "Justice Maynard's campaign for re-election [and] are public records subject to disclosure under FOIA." However, the order further held "that the remaining [eight] e-mail communications are not public records as defined by FOIA. In no way do these [eight] e-mails contain information related to the 'affairs of government', Justice Maynard's 'official acts' as a state officer, or the conduct of the public's business." Accordingly, the circuit court ordered Mr. Canterbury to disclose to the AP only the five e-mails which involved Justice Maynard's campaign for re-election. From this order, the parties filed their appeals.

## II.

### STANDARD OF REVIEW

In the case *sub judice*, we are called upon to review a final order by the circuit court that granted, in part, and denied, in part, the AP's request for injunctive relief.[8] As a general matter we have recognized that,

[u]nless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion.

Syl. pt. 1, *G Corp, Inc. v. MackJo, Inc.*, 195 W.Va. 752, 466 S.E.2d 820 (1995) (quoting Syl. pt. 11, *Stuart v. Lake Washington Realty Corp.*, 141 W.Va. 627, 92 S.E.2d 891 (1956)). More specifically, we have held that,

[i]n reviewing the exceptions to the findings of fact and conclusions of law supporting the granting [or denial] of [an] ... injunction, we will apply a three-pronged deferential standard of review. We review the final order granting [or denying] the ... injunction and the ultimate disposition under an abuse of discretion standard, we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law *de novo*.

Syl. pt. 1, *State v. Imperial Mktg.*, 196 W.Va. 346, 472 S.E.2d 792 (1996). *Accord Weaver v. Ritchie*, 197 W.Va. 690, 693, 478 S.E.2d 363, 366 (1996). With these standards in mind, we turn to the merits of this case.

## III.

### DISCUSSION

This case presents the issue of whether thirteen e-mail communications sent by Jus-

---

and Justice Maynard's staff, as well as communication between Justice Maynard and/or his staff with Brenda Magann, a Court employee. The record clearly reflects that no such communications existed.

7. *See* W. Va.Code § 29B–1–5(1) (1977)(Rep. Vol. 2007) ("Any person denied the right to inspect the public record of a public body may institute proceedings for injunctive or declaratory relief in the circuit court in the county where the public record is kept.").

8. The circuit court's order explicitly held that insofar "[a]s the injunctive relief provided effectively resolves the dispute between the parties,

declaratory relief is unnecessary." We also should note that the parties have suggested that the standard of review is that which we utilize for summary judgment. *See Farley v. Worley*, 215 W.Va. 412, 418, 599 S.E.2d 835, 841 (2004) (" 'Summary judgment is the preferred method of resolving cases brought under FOIA.' ") (quoting *Evans v. Office of Personnel Mgt.*, 276 F.Supp.2d 34, 37 (D.D.C.2003)). However, that standard of review is not applicable because the trial court held an evidentiary hearing in which witness testimony was taken. We therefore treat the disposition as an order arising from a bench trial. *See* W. Va. R. Civ. P. 52(a).

tice Maynard to Mr. Blankenship are subject to disclosure as public records under FOIA.[9] In addition to this substantive issue, this case presents an important procedural issue under FOIA concerning the circuit court's *in camera* review of the thirteen e-mails. Insofar as both the substantive and procedural issues require an examination of specific language under FOIA, we must provide the framework for our statutory analysis.

■■■■ This Court has long held that " '[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' " *Huffman v. Goals Coal Co.*, 223 W.Va. 724, 729, 679 S.E.2d 323, 328 (2009) (quoting Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)). On the other hand, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). Additionally, as a general matter, "the words of a statute are to be given their ordinary and familiar significance and meaning[.]" *Amick v. C & T Dev. Co., Inc.*, 187 W.Va. 115, 118, 416 S.E.2d 73, 76 (1992). "It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker*, 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996).

### A. In Camera Review Under FOIA

■■■■ As we indicated earlier in this opinion, the trial court required Mr. Canterbury to produce the thirteen e-mails for an *in camera* review. This Court has not previously addressed the issue of producing documents for an *in camera* review in a FOIA proceeding. Prior FOIA decisions of this Court approved of requiring a government entity to produce a *Vaughn* index:

When a public body asserts that certain documents or portions of documents in its possession are exempt from disclosure under any of the exemptions contained in W. Va.Code, 29B–1–4 (2002 Repl. Vol.) (2003 Supp.), the public body must produce a *Vaughn* index named for *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The *Vaughn* index must provide a relatively detailed justification as to why each document is exempt, specifically identifying the reason(s) why an exemption under W. Va.Code, 29B–1–4 is relevant and correlating the claimed exemption with the particular part of the withheld document to which the claimed exemption applies. The *Vaughn* index need not be so detailed that it compromises the privilege claimed. The public body must also submit an affidavit, indicating why disclosure of the documents would be harmful and why such documents should be exempt.

Syl. pt. 6, in part, *Farley v. Worley*, 215 W.Va. 412, 599 S.E.2d 835 (2004). The purpose of the *Vaughn* index is " 'to allow the courts to determine the validity of the Government's claims without physically examining each document.' " *Daily Gazette Co., Inc. v. West Virginia Dev. Office*, 198 W.Va. 563, 574, 482 S.E.2d 180, 191 (1996) (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 861 (D.C.Cir.1980)). In the instant case, the record shows that Mr. Canterbury produced a *Vaughn* index for the trial court.

Nevertheless, the trial court went beyond reliance on the *Vaughn* index to make its decision. In this regard, the trial court required the actual production of the e-mails for an *in camera* review. The trial court's order specifically noted that "[t]he Court is cognizant that in other cases *in camera* review may be burdensome, in both time and cost, however, given the definition of 'public record' and the facts of the case presented,

---

9. We wish to make abundantly clear that this opinion does not address the issue of whether communication between Justice Maynard and his law clerks or other court personnel concerning judicial decision-making was subject to disclosure under FOIA. The circuit court's order expressly noted in passing that "FOIA exempts from disclosure 'internal memoranda or letters received or prepared by any public body.' W. Va.Code § 29B–1–4(a)(8) (2008). Accordingly, such internal communications and information would clearly reflect the judicial decision making process and would be exempt from disclosure under FOIA."

the Court believes in camera review of the e-mails was required in this case."

■ The authority for the trial court's *in camera* review is found in W. Va.Code § 29B–1–5(2) (1977) (Repl. Vol. 2007). This statute states, in relevant part, that "[i]n any suit filed under [FOIA], the court has jurisdiction to ... order the production of any records improperly withheld from the person seeking disclosure.... The court, on its own motion, may view the documents in controversy in camera before reaching a decision[.]" In view of the plain and unambiguous language of this statute, we now hold that, in a proceeding seeking disclosure of public records under the West Virginia Freedom of Information Act, W. Va.Code § 29B–1–1, *et seq.*, a trial court may *sua sponte* order the production of the records withheld and hold an *in camera* review of the records in order to decide whether any of the records are subject to disclosure under the Act. W. Va.Code § 29B–1–5(2) (1977) (Repl. Vol. 2007).

■ Although we acknowledge that a trial court has discretion to conduct an *in camera* review of requested FOIA documents, a trial court should "not resort to in camera review 'as a matter of course.'" *United America Fin., Inc. v. Potter*, 531 F.Supp.2d 29, 40 n. 3 (D.D.C.2008). In other words,

> a [trial] court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with *Vaughn*. The [trial] court should first offer the agency the opportunity to demonstrate, through [a *Vaughn* index], detailed affidavits and oral testimony, that the withheld information is clearly exempt and contains no segregable, nonexempt portions.

*Spirko v. United States Postal Service*, 147 F.3d 992, 997 (D.C.Cir.1998). *See also Wick Communications Co. v. Montrose County Bd. of County Comm'rs*, 81 P.3d 360, 366 (Colo.2003) ("As the requesting party in this case did not show that a personal diary was likely a public record, the trial court is not authorized to conduct an in camera review of the defendant's personal diary.").

In the instant proceeding, the trial court held an evidentiary hearing prior to requiring Mr. Canterbury to produce the thirteen e-mails for *in camera* review. Insofar as the trial court articulated a valid reason for needing to actually review the e-mails, we find that the trial court did not abuse its discretion in requiring Mr. Canterbury to produce the e-mails for an *in camera* review.

### B. Determining Whether the E-mails are Public Records Under FOIA

We begin by noting that the underlying purpose of FOIA has been set out by the Legislature as follows:

> Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the state of West Virginia that all persons are, unless otherwise expressly provided by law, entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments of government they have created. To that end, the provisions of this article shall be liberally construed with the view of carrying out the above declaration of public policy.

W. Va.Code § 29B–1–1 (1977) (Repl. Vol. 2007). This Court has held that "[t]he disclosure provisions of this State's Freedom of Information Act, W. Va.Code, 29B–1–1 *et seq.*, as amended, are to be liberally construed, and the exemptions to such Act are to be strictly construed. W. Va.Code, 29B–1–1 [1977]." Syl. pt. 4, *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985).

■ W. Va.Code § 29B–1–3 (1992) (Repl. Vol. 2007) provides that "[e]very person has a right to inspect or copy any public record of a public body in this state, except as otherwise expressly provided by [§ 29B–1–4] of

this article." FOIA defines a "public body" as

> every state officer, agency, department, including the executive, legislative and judicial departments, division, bureau, board and commission; every county and city governing body, school district, special district, municipal corporation, and any board, department, commission, council or agency thereof; and any other body which is created by state or local authority or which is primarily funded by the state or local authority.

W. Va.Code § 29B–1–2(3) (1977) (Repl. Vol. 2007). It is clear that the definition of a "public body" under FOIA includes the judicial branch of State government.[10] *See* W. Va. Tr. Ct. R. 10.04(a) ("All persons are, unless otherwise expressly provided by law or excepted by Rule 10.03, entitled to full and complete information regarding the operation and affairs of the judicial system. Any elected or appointed official or other court employee charged with administering the judicial system shall promptly respond to any request filed pursuant to the West Virginia Freedom of Information Act."); *State ex rel. Wyant v. Brotherton,* 214 W.Va. 434, 440 n. 13, 589 S.E.2d 812, 818 n. 13 (2003) ("We recognize that Rule 10.04 of the West Virginia Trial Court Rules permits access to court files and other court records under the FOIA."). Clearly, FOIA may be utilized to obtain nonexempt judicial public records.[11]

The AP makes essentially two arguments as to why the thirteen e-mails sent by Justice Maynard to Mr. Blankenship are public records. First, the AP asserts that, under FOIA's express definition of public records, the e-mails were public records. Alternative-ly, the AP argues the e-mails became public records because of the public interest context in which they were sought.[12] We will address each issue separately.

** 1. The e-mails are not public records under FOIA's express definition of a public record.** FOIA "generally permits disclosure of information retained by government agencies, i.e., public records." Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 26(b)(1) (3d ed. 2008).[13] A "public record" under FOIA is defined as "includ[ing] any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body." W. Va.Code § 29B–1–2(4). In order to fully consider the issues presented in the case sub judice, however, we must further discern the meaning of two elements of this definition: "writing" and "the public's business."

First, a "writing" is defined by FOIA as "any books, maps, photographs, cards, tapes, recordings or other documentary materials regardless of physical form or characteristics." W. Va.Code § 29B–1–2(5). It is clear from FOIA's definition of "writing", and we so hold, that the definition of a "writing" contained in W. Va.Code § 29B–1–2(5) (1977) (Repl. Vol. 2007), of the West Virginia Freedom of Information Act includes an e-mail communication. *Accord Tiberino v. Spokane County, Office of the Prosecuting Attorney,* 103 Wash.App. 680, 13 P.3d 1104, 1108 (2000) ("Ms. Tiberino does not dispute that the e-mail records are writings and that they are prepared, owned, used or retained by a state agency."). Second, although FOIA does not

---

**10.** We reject the suggestion in Mr. Canterbury's brief that FOIA has no application to records kept by the judicial branch of government.

**11.** We wish to make clear that there is no absolute right to obtain disclosure of nonexempt judicial public records through FOIA if other means of disclosure exist. *See e.g., Syl. pt. 3, State ex rel. Wyant v. Brotherton,* 214 W.Va. 434, 589 S.E.2d 812 (2003) ("An inmate may not use the Freedom of Information Act, W. Va.Code § 29B–1–1 *et seq.,* to obtain court records for the purpose of filing a petition for writ of habeas corpus. Instead, an inmate is bound to follow the procedures set out in the Rules Governing Post-Con-viction Habeas Corpus Proceedings in West Virginia for filing a petition for writ of habeas corpus and to obtain documentation in support thereof.").

**12.** The AP's brief frames the issues in a variety of ways. However, we have reduced those issues to their analytical essence.

**13.** Insofar as this case turns on whether or not the thirteen e-mails are "public records," we need not address FOIA's exemptions. *See* W. Va.Code § 29B–1–4 (2009) (Supp.2009) (setting out FOIA's exemptions).

define the phrase "the public's business," it has been correctly stated that "the phrase 'public business' is ... commonly understood to mean the business of the government." *O'Melia v. Lake Forest Symphony Ass'n, Inc.*, 303 Ill.App.3d 825, 237 Ill.Dec. 223, 708 N.E.2d 1263, 1265 (1999). That is, "the words 'public business' ... relate only to matters within the purview of the agency's duties, functions and jurisdiction." *Lucarelli v. Freedom of Information Comm'n*, No. CV 91–0063707S, 1992 WL 209848, at *3 (Conn.Super.Ct. Aug.18, 1992). *See also Kansas City Star Co. v. Fulson*, 859 S.W.2d 934, 940 (Mo.Ct.App.1993) ("Public business encompasses those matters over which the public governmental body has supervision, control, jurisdiction or advisory power.").

Based upon the plain language of FOIA's definition of "public record," we find this definition to be free from ambiguity. *See Ogden Newspapers, Inc. v. City of Williamstown*, 192 W.Va. 648, 650, 453 S.E.2d 631, 633 (1994) ("[W]e find the definition of 'public record' in [FOIA] to be plain and unambiguous."). Under that definition, an e-mail communication or other writing is a public record *only if* it relates to the conduct of the public's business, *i.e.*, the official duties, responsibilities or obligations of a particular public body.

Turning to the issue at hand, this Court has not previously decided whether a personal e-mail communication by a public official or employee constitutes a public record as defined under FOIA. However, the courts of other states have addressed the issue under their respective FOIA statute or its equivalent. As illustrated below, *the majority of courts* have held that personal e-mail communication by a public official or employee *does not constitute* a public record for purposes of disclosure under FOIA or its equivalent.

For example, the court in *Griffis v. Pinal County*, 215 Ariz. 1, 156 P.3d 418 (2007), addressed the issue of whether personal e-mails sent and received by a former county manager were public documents. In *Griffis*, a local Arizona newspaper obtained a trial court order requiring disclosure of e-mails sent and received by the former county manager during a specific time period. The trial court did so on the grounds that "everything

that is on a computer of the Pinal County ... governmental entity is presumed to be a public record and that any records generated on a public computer are presumptively open to public inspection." *Griffis*, 156 P.3d at 420 (internal quotations omitted). The case ultimately reached the Arizona Supreme Court. That court held that a purely personal e-mail communication was not a public record subject to disclosure under that state's FOIA statute. *Griffis* reasoned as follows:

The public records law requires all public officials to make and maintain records reasonably necessary to provide knowledge of all activities they undertake in the furtherance of their duties. That definition does not encompass documents of a purely private or personal nature. Instead, only those documents having a "substantial nexus" with a government agency's activities qualify as public records. Determining a document's status, therefore, requires a content-driven inquiry.

Because the nature and purpose of the document determine its status, mere possession of a document by a public officer or agency does not by itself make that document a public record, nor does expenditure of public funds in creating the document. To hold otherwise would create an absurd result: Every note made on government-owned paper, located in a government office, written with a government-owned pen, or composed on a government-owned computer would presumably be a public record. Under that analysis, a grocery list written by a government employee while at work, a communication to schedule a family dinner, or a child's report card stored in a desk drawer in a government employee's office would be subject to disclosure. The public records law was never intended to encompass such documents; the purpose of the law is to open *government* activity to public scrutiny, not to disclose information about private citizens.

Although the public records law creates a strong presumption in favor of disclosure, that presumption applies only when a document first qualifies as a public record. To apply a presumption of disclosure when

a question exists as to the nature of the document is inappropriate: The initial inquiry must be whether the document is subject to the statute. The reason for this requirement is clear: Disclosure of purely private documents does nothing to advance the purposes underlying the public records law. The contents of purely private documents shed no light on how the government is conducting its business or spending taxpayer money.

*Griffis,* 156 P.3d at 421–22 (internal quotations and citations omitted).[14]

Similarly, in *Denver Publishing Co. v. Board of County Commissioners of County of Arapahoe,* 121 P.3d 190 (Colo.2005), a newspaper publishing company successfully obtained a trial court order that required disclosure of e-mail communication between a county recorder and assistant chief deputy under Colorado's Open Records Act. The case reached the Supreme Court of Colorado. The state high court held that e-mail communication that was purely personal was not a public record subject to disclosure under Colorado's Open Records Act. The court reasoned as follows:

> Given the plain language of ... the CORA statutory scheme as a whole, it is apparent that e-mail must meet the same requirements as any other record to be deemed a "public record". To be a "public record", an e-mail message must be for use in the performance of public functions or involve the receipt and expenditure of public funds. The simple possession, creation, or receipt of an e-mail record by a public official or employee is not dispositive as to whether the record is a "public record". The fact that a public employee or public official sent or received a message while compensated by public funds or using publicly-owned computer equipment is insufficient to make the message a "public record".
>
> ....
>
> After considering the content of the e-mail messages, as required by the statute, we conclude that not all of the e-mail messages at issue here have a demonstrable connection to the performance of public functions or involve the receipt or expenditure of public funds. It is apparent that a large portion of the e-mail messages instead contain only sexually-explicit exchanges between Baker and Sale. Based upon the content of the e-mails, it is clear they were sent in furtherance of their personal relationship and were not for use in the performance of the public functions of the Clerk and Recorder's Office. These messages demonstrate very private exchanges.... The only discernable purpose of disclosing the content of these messages is to shed light on the extent of Baker and Sales' fluency with sexually-explicit terminology and to satisfy the prurient interests of the press and the public.
>
> Accordingly, not all of the e-mail messages at issue are public records under CORA.....
>
> ....
>
> Given the court of appeals' erroneous understanding of the "public records" definition and the error in the district court's order finding that all of the messages were "public records", we reverse the court of appeals' interpretation and application of the "public records" definition and remand with the directions to return the case to the district court for findings consistent with this opinion.

*Denver Publ'g Co.,* 121 P.3d at 199–204.

In another such case, *State v. City of Clearwater,* 863 So.2d 149 (Fla.2003), a newspaper company filed an action seeking an order compelling the City of Clearwater to release all e-mail sent from or received by two city employees who used government-owned computers for communication. The trial court rejected the request. An appellate court affirmed, but certified a question to the Florida Supreme Court. The certified question was as follows:

> Whether all e-mails transmitted or received by public employees of a government agency are public records pursuant

---

**14.** The high court in *Griffis* remanded the case for a determination of whether the contents of any of the e-mails constituted a public document.

to Section 119.011(1), Florida statutes (2000), and Article I, Section 24(a) of the Florida Constitution by virtue of their placement on a government-owned computer system.

*Clearwater*, 863 So.2d at 150. The high court in *Clearwater* answered the certified question in the negative as follows:

Times Publishing argues that the placement of e-mails on the City's computer system makes the e-mails public records, regardless of their content or intended purpose....

....

... Times Publishing's argument that the placement of e-mails on the City's computer network automatically makes them public records is contrary to this Court's decision in *Shevin v. Byron, Harless, Schaffer, Reid & Assocs., Inc.*, 379 So.2d 633 (Fla.1980). In *Shevin*, this Court rejected the First District's conclusion that "section 119.011(1) applies to almost everything generated or received by a public agency." *Id.* at 640. Although this Court acknowledged that the Legislature broadened the class of public records in enacting section 119.011(1), this Court concluded that the definition of the term "public records" limited "public information to those materials which constitute *records*—that is, materials that have been prepared *with the intent* of perpetuating or formalizing knowledge." *Id.* Thus, it cannot merely be the placement of the e-mails on the City's computer system that makes the e-mails public records. Rather, the e-mails must have been prepared "in connection with official agency business" and be "intended to perpetuate, communicate, or formalize knowledge of some type." *Id.*

....

... [P]rivate documents cannot be deemed public records solely by virtue of their placement on an agency-owned computer. The determining factor is the nature of the record, not its physical location.

....

Based on the foregoing, we conclude that "personal" e-mails are not "made or received pursuant to law or ordinance or in connection with the transaction of official

business" and, therefore, do not fall within the definition of public records in section 119.011(1) by virtue of their placement on a government-owned computer system. Accordingly, we answer the rephrased question in the negative and approve the Second District's decision.

*Clearwater*, 863 So.2d at 151–55.

The Arkansas case of *Pulaski County v. Arkansas Democrat–Gazette, Inc.*, 370 Ark. 435, 260 S.W.3d 718 (2007), involved a county comptroller who was arrested for embezzlement. Subsequent to the arrest, a local newspaper filed a complaint seeking disclosure of all e-mail communications between the county comptroller and a nongovernmental third-party that was stored on a county computer. The trial court ordered disclosure of all e-mails, and the county appealed to the Arkansas Supreme Court. On appeal, the county argued that the e-mails were not public documents subject to disclosure under the state's FOIA statute. The high court in *Pulaski* addressed the issue as follows:

Pulaski County argues that when determining whether a document is a public record, we must look at the content of the document, rather than where it is located. Appellee agrees that we must look at the content, but also argues that we must look at the context, including "the circumstances surrounding the transmission of the e-mails, the location of the e-mails, and subsequent facts that have come to light regarding [the comptroller] in his position as a public official."

....

Pulaski County argues that an *in camera* review is necessary in this case to determine the content of the e-mails. Specifically, Pulaski County asserts that the circuit court's finding could not have been made without reviewing the e-mails in question. Further, it contends that because the circuit court did not conduct an *in camera* review, the e-mails were not included in the record, and therefore there is no evidence in the record to support the circuit court's findings

Appellee responds, arguing that because there is no claim that the e-mails fall under

a FOIA exemption, an *in camera* review is not necessary....

We have held that the circuit court must review the relevant information in question to determine whether an FOIA exemption to disclosure applies.... While the present case does not involve a claim that the e-mails fall under an FOIA exemption, we hold that an *in camera* review is necessary.

Comparing the nature and purpose of a document with an official's or agency's activities to determine whether the required nexus exists necessarily requires a fact-specific inquiry. To make that inquiry, while maintaining the privacy of personal, non-public documents, a court should perform an *in camera* review. A neutral court should be the final arbiter of what qualifies as a public record....

....

Rather than relying on Pulaski County or Appellee to make the determination of whether the documents are public, it is necessary to have a neutral court make this decision. Accordingly, we remand this case to the circuit court with instruction to conduct an *in camera* review to determine if these e-mails "constitute a record of the performance of official functions that are or should be carried out by a public official or employee" thereby making them "public records" pursuant to the FOIA.

*Pulaski,* 260 S.W.3d at 722–26.

Likewise, in *State ex rel. Wilson–Simmons v. Lake County Sheriff's Department,* 82 Ohio St.3d 37, 693 N.E.2d 789 (1998), an employee of a county sheriff's department filed a petition for a writ of mandamus with the Ohio Supreme Court, seeking to compel the sheriff to provide her access to an e-mail generated by fellow employees that allegedly contained racial slurs against her. The high court in *Wilson–Simmons* held that the e-mail was not a public record and therefore the sheriff did not have to disclose the e-mail under the state's Public Records Act. The opinion reasoned as follows:

The requested e-mail does not constitute "records" for purposes of R.C. 149.011(G) and 149.43. R.C. 149.43(A)(1) "does not define a 'public record' as any piece of paper on which a public officer writes something." *State ex rel. Steffen v. Kraft* (1993), 67 Ohio St.3d 439, 440, 619 N.E.2d 688, 689. "To the extent that any item ... is not a 'record,' *i.e.,* does not serve to document the organization, etc., of the public office, it is not a public record and need not be disclosed." *State ex rel. Fant v. Enright,* 66 Ohio St.3d [186] at 188, 610 N.E.2d [997] at 999 [ (1993) ]. If, as alleged by Wilson–Simmons, the requested e-mail consists of racist slurs against her by individual co-workers, then, although reprehensible, the e-mail does not serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the sheriff's department. There is no evidence or allegation that the alleged racist e-mail documented sheriff's department policy or procedures. It was allegedly circulated only to a few co-workers and was not used to conduct sheriff's department business.

This conclusion, that the requested e-mail is not a record for purposes of R.C. 149.43, is supported by both state and federal precedent. *See Steffen,* 67 Ohio St.3d at 439, 619 N.E.2d at 689 ("A trial judge's personal handwritten notes made during the course of a trial are not public records."), and cases cited at 67 Ohio St.3d at 440, 619 N.E.2d at 689; *Internatl. Union, United Auto., Aerospace & Agricultural Implement Workers of Am. v. Voinovich* (1995), 100 Ohio App.3d 372, 654 N.E.2d 139 (Governor's personal calendars and appointment books did not constitute records subject to disclosure under R.C. 149.43 because they did not serve to document any official activities or functions.); *Bur. of Natl. Affairs, Inc. v. United States Dept. of Justice* (C.A.D.C.1984), 742 F.2d 1484, 1492 ("Where, as here, a document is created by an agency employee, consideration of whether and to what extent that employee used the document to conduct agency business is highly relevant for determining whether that document is an 'agency record' within the meaning of FOIA [the federal Freedom of Information Act].)"; *Gallant v. Natl. Labor Relations Bd.* (C.A.D.C.1994), 26 F.3d 168, 172 ("[E]ven

though employing agency resources in the creation of the correspondence is a relevant factor in the agency record analysis, the utilization of agency resources in this case is not as significant as the other factors employed in our precedents, which compel a conclusion that the ... correspondence was personal, rather than attributable to the agency.").

Therefore, although the alleged racist e-mail was created by public employees via a public office's e-mail system, it was never used to conduct the business of the public office and did not constitute records for purposes of R.C. 149.011(G) and 149.43. *Wilson–Simmons,* 693 N.E.2d at 792–93.

Lastly, in *Brennan v. Giles County Board of Education,* No. M2004–00998–COA–R3–CV, 2005 WL 1996625 (Tenn.Ct.App. Aug.18, 2005), the plaintiff filed an action seeking to have a county board of education disclose all "digital records of Internet activity, including e-mails sent and received, web sites visited and transmissions sent and received and the identity of any and all Internet Service Providers." *Brennan,* 2005 WL 1996625, at *1. The trial court conducted an in camera review of the requested documents and determined that none of the documents constituted a public record for disclosure under the state's Public Records Act. The plaintiff appealed arguing "that, by virtue of the fact that the requested documents were created during school hours and/or by virtue of the fact that the requested documents were created and/or stored on school owned computer equipment, these facts, per se, make them public records under the Act." *Brennan,* 2005 WL 1996625, at *2. The Tennessee Court of Appeals disagreed with the plaintiff as follows:

> [T]he Appellant herein interprets the Public Records Act very broadly and champions a reading whereby any citizen of Tennessee may gain access to any and all records created during work hours on computers owned and operated by governmental entities. However, when read in light of the applicable statutory definitions, it is clear that the legislature did not intend for all records to be available for public perusal. . . .
>
> . . . .
>
> The language of T.C.A. § 10–7–301(6) unambiguously states that, in order to be a public or state record and thereby subject to access under T.C.A. § 10–7–503, the document must be "made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency." As in this case, when a question arises as to whether certain documents fall within the purview of the statutory definition, it is the role of the trial court, as the gatekeeper of the law, to make that determination.
>
> When T.C.A. § 10–7–503 is read in conjunction with the relevant definition at T.C.A. § 10–7–301(6), it is clear that the legislature placed some limitation on those documents that may be accessed under the Public Records Act. By the plain language of the definition, this limitation involves the purpose behind the creation of the document (i.e. whether it was "made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency"). However, the limitation does not, as the Appellant argues, rest upon an inquiry into the time (i.e. whether during business hours) or upon the place where the document was produced and/or stored (i.e. on school owned computers). It was, therefore, necessary for the trial court to perform its judicial function by viewing the requested documents *in camera* to determine whether these documents were "made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency." For the trial court to allow the documents to be accessed under the Public Records Act just by the mere fact that they were made during business hours and/or on computers that were school-owned would be a violation of the clear intent of the legislature and, consequently, a dereliction of the most basic judicial duty.

*Brennan,* 2005 WL 1996625, at *2–3. *Accord City of Dallas v. Dallas Morning News, LP,* 281 S.W.3d 708, 714 (Tex.App.2009) ("The requested e-mails are not 'public information'

unless they are collected, assembled, or maintained in connection with the transaction of official business (1) by a governmental body; or (2) for a governmental body and the governmental body owns the information or has a right of access to it.").

In the instant case, the AP seeks to have this Court reject the majority position of nondisclosure of purely personal e-mail communication by a public officer or employee. Instead, the AP seeks adoption of the *minority position* taken by the court in *Cowles Publishing Co. v. Kootenai County Board of County Commissioners*, 144 Idaho 259, 159 P.3d 896 (2007). The decision in *Cowles* involved a request by a local newspaper publisher seeking access to e-mail correspondence between a manager of juvenile education and training court and her supervisor, the county prosecutor. At the time of the request, a highly publicized administrative investigation was taking place, involving financial discrepancies in the juvenile education and training court, as well as an alleged intimate relationship between the county prosecutor and the manager of juvenile education and training court. The trial court found that the e-mails were public records and ordered their disclosure. The case was appealed to the Idaho Supreme Court.

The initial inquiry made by the high court in *Cowles* was a determination of whether the e-mails constituted a public record under Idaho's Public Records Act. The opinion set out the statutory definition of a public record as follows:

> A public record "includes, *but is not limited to*, any writing containing information relating to the conduct or administration of the public's business prepared, owned, used or retained by any state agency, independent public body corporate and politic or local agency regardless of physical form or characteristics."

*Cowles*, 159 P.3d at 900 (emphasis added). The high court held that because of the language, "but is not limited to," under the statutory definition of public record, "other records and writings may qualify even if they

do not meet this definition." *Cowles*, 159 P.3d at 900. As a result of Idaho's broad statutory definition of public record, the high court in *Cowles* held that the e-mails constituted a public record.

The decision in *Cowles* justified the Court's determination that the e-mails were public records, in part, based upon the fact that the county prosecutor had publicly defended the integrity of the manager of juvenile education and training court. As a result of the county prosecutor's conduct, *Cowles* stated that "[w]hether he did so as her supervisor defending her job performance, or whether he did so because of an alleged inappropriate relationship is a public concern." *Cowles*, 159 P.3d at 900. Further, *Cowles* held that "[i]t is not simply the fact that the emails were sent and received while the employees were at work … that makes them a public record. Rather, it is their relation to legitimate public interest that makes them a public record." *Cowles*, 159 P.3d at 901.

In the instant proceeding, the trial court adopted the position taken by the court in *Cowles* and rejected the majority position. The AP contends here, as it did below, that Idaho's definition of a public record is consistent with our FOIA definition of a public record. The AP is simply wrong. Idaho's definition of public record contains a provision, "but is not limited to," that is not found in our FOIA definition.[15] The Idaho provision, "but is not limited to," permits disclosure of *any writing*, even if it does not involve "the conduct of the public's business." Idaho's expansive definition of a public record simply goes beyond what our Legislature has permitted. The reach of our FOIA definition of a public record is limited to documents that relate to "the conduct of the public's business."

We believe the majority position on e-mail communication by public officials or employees is consistent with our FOIA definition of a public record. Therefore, we hold that a "public record" under the West Virginia Freedom of Information Act (FOIA) is defined as "includ[ing] any writing containing

---

15. Only two other states use a phrase similar to "but is not limited to" in their FOIA definition of public record. *See* 5 Ill. Comp. Stat. Ann. § 140/2(c) (2002); Or. Rev. Stat. Ann. § 192.410(4) (2005).

information relating to the conduct of the public's business, prepared, owned and retained by a public body." W. Va.Code § 29B-1-2(4) (1977) (Repl. Vol. 2007). Under the clear language of the "public record" definition, a personal e-mail communication by a public official or public employee, which does not relate to the conduct of the public's business, is not a public record subject to disclosure under FOIA.

Our holding is consistent with decisions by federal courts in federal FOIA cases. *See Farley*, 215 W.Va. at 420, 599 S.E.2d at 843 ("Previously we have looked to federal FOIA cases for guidance in interpreting the West Virginia Freedom of Information Act."). Although we have been unable to find any federal court that has addressed the issue facing this Court in the context of e-mails, federal courts have addressed the specific issue of whether private documents created by a government official or employee were subject to disclosure under federal FOIA. A case on point is *Gallant v. National Labor Relations Board*, 26 F.3d 168 (D.C.Cir.1994).

In *Gallant*, a member of the National Labor Relations Board (hereinafter "the Board") sent letters and faxes to a number of individuals in an attempt to secure her reappointment to the Board. The plaintiff in *Gallant* sought disclosure of those documents under the federal FOIA. The district court denied the request on the ground that the letters and faxes were private documents, not "agency records," *i.e.*, public documents. The plaintiff appealed. The Court of Appeals agreed with the district court based upon the following reasoning:

> While [FOIA] itself does not indicate the types of documents that constitute "agency records" within the meaning of the Act, case law makes clear that the term "agency records" is not so broad as to include personal materials in an employee's possession, even though the materials may be physically located at the agency....
>
> ....
>
> ... [I]n cases ... where documents are created by an agency employee and located within the agency, use of the document becomes more important in determining the status of the document under FOIA. In

such cases an agency employee's creation of a document can be attributed to an agency depending on the purpose for which the document was created, the actual use of the document, and the extent to which the creator of the document and other employees acting within the scope of their employment relied upon the document to carry out the business of the agency. Thus, [the plaintiff's] suggested test that employing agency resources, standing alone, is sufficient to render a document an "agency record," is inconsistent with governing precedent.

> On the facts before the district court at summary judgment, we reach the same conclusion that court did. The ... letters were "personal records" of [the Board member], and not "agency records" within the meaning of the FOIA. Nothing in the record here indicates that [the Board member] created the correspondence with anything other than the purely personal objective of retaining her job. The actual use of the correspondence, and [the Board member] and other employees' lack of reliance on the correspondence to carry out the business of the agency, also supports the district court's finding that the documents were not agency records ....

*Gallant*, 26 F.3d at 171–72 (internal quotation marks and citations omitted).

In another similar, and relatively recent case, *Bloomberg, L.P. v. United States Securities and Exchange Commission*, 357 F.Supp.2d 156 (D.D.C.2004), a media company, Bloomberg, L.P., filed an action in a federal district court seeking disclosure of certain documents from the office of the United States Securities and Exchange Commission (hereinafter "the SEC"). Specifically, the plaintiff sought the SEC chairman's calendar, telephone logs, and telephone message slips, as well as notes by the chairman's chief of staff. The district court held that all the documents sought were personal and not subject to disclosure as agency records under the federal FOIA. The district court addressed the request for each document as follows:

> Bloomberg argues that Chairman Pitt's calendar is an "agency record" subject to

FOIA disclosure requirements because under the totality of the circumstances ... the calendar was relied on by agency personnel and was integrated into the agency's record system when it was maintained on the computer system and backed-up every thirty-days on the server. The Court disagrees and, for the following reasons, finds that Chairman Pitt's calendar is a personal record....

First, ... only Chairman Pitt's personal assistant, his Chief of Staff, and Deputy Chief of Staff accessed the calendar, and then only to determine his availability. Second, ... Chairman Pitt's calendar was created for his own personal use, not for the purpose of creating an official record of his schedule. Furthermore, that the calendar includes both personal and business appointments does not preclude a finding that the document is a personal record. Finally, Bloomberg has argued that because the calendar was maintained on the agency computer system and backed-up every thirty days, the calendar was integrated into the agency record system. However, ... the D.C. Circuit has previously held that employing agency resources, standing alone, is not sufficient to render a document an agency record. Accordingly, the Court does not find that the fact that the calendar was maintained on the agency computer system establishes that it was integrated into the agency's records.

The Court thus finds that Chairman Pitt's calendar is not an "agency record" subject to the Court's jurisdiction under FOIA....

. . . .

Chairman Pitt's telephone logs ... have been withheld by the SEC as personal records. According to the SEC, the telephone logs were maintained for the Chairman's personal convenience, to remind him of calls that had not been returned, or of calls that he wanted to make. The daily message logs included numerous records of calls from family members and personal friends on a range of issues unrelated to the business of the [SEC]....

Bloomberg argues that because the logs were maintained in electronic form using computer hardware and software and were archived every thirty days, they were integrated into the agency record-keeping system. Moreover, Bloomberg asserts that because the logs contain agency-related business and the Chairman's assistant and Deputy Chief of Staff had access to the logs, they are agency records under FOIA.... For the following reasons, the Court finds Bloomberg's arguments unpersuasive, and concludes that, much like Chairman Pitt's calendar, the telephone logs are personal records.

First, the logs were created and maintained to remind him of calls to make or return, and did not serve as an official record of his telephone calls. Second, as was the case with his calendar, only the Chairman's assistant and his two most senior staff had access to the telephone logs. There is no indication that these individuals relied on the telephone log in any significant way in the course of their duties. Third, that the log was maintained electronically on the agency's computer system is not dispositive-as previously noted.... Accordingly, the Court finds that the totality of the circumstances support a finding that Chairman Pitt's telephone logs are personal records that are not subject to the Court's jurisdiction under FOIA.

. . . .

... The SEC has withheld [telephone message slips] as personal records and describes them as logs and messages maintained for [the Chairman's] personal use and convenience, so that he could ensure that he responded to any call (whether family, social or business related)....

Bloomberg argues that the message slips are "agency records" under FOIA because they were created or maintained "entirely with [SEC] resources" and they contained information related to agency business....

. . . .

... [T]he Court finds that the books of telephone message slips and the individual message slip are not "agency records." These documents were intended only for

Chairman Pitt's personal use and were not circulated to anyone other than him and his assistant, who wrote them. Moreover, they were not kept with any official agency records. . . .

. . . .

The final document withheld by the SEC as a personal record [are] . . . notes of Mark Radke, Chairman Pitt's Chief of Staff, regarding an April 26, 2002 meeting with Eugene O'Kelly, Chief Executive of KPMG. Radke attests that these were "personal notes" he took during the meeting, and that the notes were not circulated to anyone in the Office of the Chairman or otherwise. The notes were kept with his private files in his office and no one else had access to them. . . .

In response, Bloomberg argues that the notes were created by Radke in the course of his official duties as Chief of Staff and they appear to be the only record of Chairman Pitt's conversation with the head of [the] accounting firm . . ., which Bloomberg asserts was the subject of considerable press coverage. In sum, it is Bloomberg's contention that disclosure of the notes of Chairman Pitt's meeting with Mr. O'Kelly would undoubtedly serve to open agency action to the light of public scrutiny.

Bloomberg's arguments regarding the public interest in these notes sidestep the primary issue before the Courtwhether such notes are, in fact, "agency records" that are subject to the disclosure requirements of FOIA. The Court concludes that they are not. . . . The notes were created for Radke's own personal reference, were not relied upon by other agency personnel, were not incorporated in agency files, and were not under the agency's control. Even Radke apparently did not rely on these notes for any purpose. FOIA does not sweep into [its] reach personal papers that may relate to an employee's work . . . but which the individual does not rely upon to perform his or her duties. Accordingly,

the Court concludes that Mark Radke's notes of the April 26, 2002 [meeting] are not "agency records" subject to its jurisdiction under FOIA.

*Bloomberg,* 357 F.Supp.2d at 164–67 (internal quotations and citations omitted). *See also Sibille v. Federal Reserve Bank of New York,* 770 F.Supp. 134 (S.D.N.Y.1991) (handwritten notes of meetings and telephone conversations were not agency records under FOIA).

■ In view of our holding in the instant case, and the foregoing authorities, we conclude that none of the thirteen e-mails at issue herein constituted a public record under FOIA. None of the e-mail's contents involved the official duties, responsibilities or obligations of Justice Maynard as a duly-elected member of this Court. Twelve of the e-mails simply provided URL[16] links to privately-operated internet websites that carried news articles Justice Maynard believed Mr. Blankenship would be interested in reading. All twelve of the news articles were written by private entities and were already in the public domain. The thirteenth e-mail did nothing more than provide Mr. Blankenship with the agenda for a meeting being held by a private organization. Consequently, logic dictates that we conclude that not one of the thirteen e-mails was related in any manner to either the conduct of the public business, or to the official duties, responsibilities or obligations of the particular public body, which was in this instance, Justice Maynard. In the final analysis, if we adopted the AP's position that these e-mails constituted public records, then "a grocery list written by a government employee while at work, a communication to schedule a family dinner, or a child's report card stored in a desk drawer in a government employee's office would be subject to disclosure. [FOIA] was never intended to encompass such documents[.]" *Griffis,* 156 P.3d at 421. *Accord Braun v. City of Taft,* 154 Cal.App.3d 332, 201 Cal.Rptr. 654, 658 (1984) (" 'This definition [of public record] is intended to cover

---

**16.** URL is the "[a]bbreviation of Uniform Resource Locator, the global address of documents and other resources on the World Wide Web." Webopedia Online Dictionary, http://www.webopedia.com/term/u/url.html. *See also Felsher*

*v. University of Evansville,* 755 N.E.2d 589, 595 (Ind.2001) ("[E]ach web page is stored and accessed as a separate file located by a unique address called a Uniform Resource Locator (URL).").

every conceivable kind of record that is involved in the governmental process.... Only purely personal information unrelated to 'the conduct of the public's business' could be considered exempt from this definition, i.e., the shopping list phoned from home, the letter to a public officer from a friend which is totally void of reference to governmental activities.' " (quoting *San Gabriel Tribune v. Superior Court*, 143 Cal.App.3d 762, 774, 192 Cal.Rptr. 415 (Cal.Ct.App.1983))); *Clearwater*, 863 So.2d at 154 ("If the Attorney General brings his household bills to the office to work on during lunch, do they become public record if he temporarily puts them in his desk drawer? If a Senator writes a note to herself while speaking with her husband on the phone does it become public record because she used a state note pad and pen? The Sheriff's secretary, proud of her children, brings her Mother's Day cards to the office to show her friends. Do they become public records if she keeps them in the filing cabinet?").

■ **2. The e-mails were not public records because of the public interest context in which they were sought.** The AP has further argued that a determination of whether the e-mails are public records should also require an examination of the public interest "context" in which they were sought. In this regard, the AP asserts that the e-mails covered a period when there was great public interest in the relationship between Justice Maynard and Mr. Blankenship, as well as "enormous statewide and national public interest" in our judicial recusal procedures. Insofar as the e-mails were sought during a time when there was public interest in those matters, the AP takes the position that the e-mails became public records for purposes of FOIA.

This context-driven analysis advocated by the AP was adopted by the circuit court. In its order, the circuit court held "that both the *content* of the e-mails at issue and the *context* under which they were created are relevant to the determination of whether they contain information relating to the conduct of the public's business." [17] In rendering this ruling, the circuit court made two distinct context-driven determinations. First, the circuit court found that five of the e-mails were public records because they were created in the public interest context of Justice Maynard's campaign for re-election. Second, the circuit court determined that because of the public's interest in the relationship between Justice Maynard and Mr. Blankenship, the remaining eight e-mails would have been ordered disclosed had Justice Maynard not recused himself from cases involving Massey Energy Company.

On appeal to this Court, the AP requests that we also adopt a context driven analysis to determine whether the subject e-mails should be disclosed. However, we are not persuaded by either the AP or the circuit court's reliance on a document's context as a determinative factor of a document's status as a public record and conclude, instead, that the better approach, which is dictated by our statutory law and followed by a majority of "[o]ther states [that] [18] use[s] a [solely] con-

---

**17.** The trial court's reliance upon a context-driven analysis was due to the fact that it adopted the analytical framework relied upon by the Idaho Supreme Court in *Cowles*. That is, the court in *Cowles* applied a context-driven analysis in reaching its decision.

**18.** Nevertheless, our cases do permit a "context-driven" analysis *for writings that are, in fact, public records*, but which are specifically exempted from disclosure by FOIA. *See* W. Va.Code § 29B–1–4 (2009) (Supp.2009) (setting out FOIA's exemptions). However, we have never held that a *context-driven* analysis is appropriate for deciding whether a personal document should be deemed a public record in the first instance. *See, e.g., In re Charleston Gazette FOIA Request*, 222 W.Va. 771, 671 S.E.2d 776 (2008) (allowing public interest to be a factor in decid-

ing whether to disclose public records of activity logs and payroll time sheets of police officers); *Smith v. Bradley*, 223 W.Va. 286, 673 S.E.2d 500 (2007) (allowing public interest to be a factor in deciding whether to disclose public record performance evaluations in the form of student, peer, and chair evaluations); *Manns v. City of Charleston Police Dep't.*, 209 W.Va. 620, 550 S.E.2d 598 (2001) (allowing public interest to be a factor in deciding whether to disclose public records regarding outcome of police department's internal investigations of every officer against whom civil or criminal complaint had been filed); *Robinson v. Merritt*, 180 W.Va. 26, 375 S.E.2d 204 (1988) (allowing public interest to be a factor in deciding whether to disclose workers' compensation public records containing names, addresses, employer information, and information regarding type of injuries sustained

tent-driven analysis in determining whether a document is a public record." *Pulaski*, 260 S.W.3d at 722. *Accord Griffis*, 156 .P.3d at 421 ("Determining a document's status . . . requires a content-driven inquiry."); *Denver*, 121 P.3d at 197 ("[T]he 'public records' definition . . . require[s] a content-driven inquiry ensuring the records disclosed . . . were tied to public functions or public funds.").

As previously indicated, FOIA defines a public record as "any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body." W. Va.Code § 29B-1-2(4). This definition neither expressly nor implicitly makes a document a public record merely because of public interest in the record. For this Court to engage in the context-driven analysis used by the circuit court and urged by the AP, this Court would have to rewrite FOIA's definition of a public record to include a context-driven analysis. Simply put, we are not at liberty to rewrite FOIA's definition of a public record to include a context-driven analysis. We have held on a number of occasions that "[t]his court 'cannot rewrite [a] statute so as to provide relief . . . nor can we interpret the statute in a manner inconsistent with the plain meaning of the words.'" *McVey v. Pritt*, 218 W.Va. 537, 540–41, 625 S.E.2d 299, 302–03 (2005) (quoting *VanKirk v. Young*, 180 W.Va. 18, 20, 375 S.E.2d 196, 198 (1988)). *Accord Dunlap v. Friedman's, Inc.*, 213 W.Va. 394, 398, 582 S.E.2d 841, 845 (2003) ("[T]his Court cannot substitute its own judgment for that of the legislature and significantly rewrite the statute."); *State ex rel.*

*Frazier v. Meadows*, 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994) ("Courts are not free to read into the language what is not there, but rather should apply the statute as written.").

If FOIA's definition of a public record is to include an examination of the record's context by virtue of the public's interest in the record, the Legislature must add such language to that definition. The Legislature has not done so. Consequently, we hold that a trial court's determination of whether personal e-mail communication by a public official or employee is a public record, subject to disclosure under the West Virginia Freedom of Information Act, W. Va.Code § 29B-1-1, *et seq.*, is restricted to an analysis of the content of the e-mail and does not extend to a context-driven analysis because of public interest in the record.

Accordingly, we find that the circuit court was correct in refusing to release eight of the e-mails,[19] but committed error in ordering disclosure of the five remaining e-mails.

## IV.

## CONCLUSION

We find that none of the thirteen e-mails sought by the AP were public records under FOIA. Consequently, we affirm that part of the trial court's order which denied the AP access to eight of the e-mails, but reverse that part of the order which required disclosure of the remaining five e-mails. This case is remanded to the trial court for further disposition consistent with this opinion.[20]

by numerous injured workers); *Child Prot. Group v. Cline*, 177 W.Va. 29, 350 S.E.2d 541 (1986) (allowing public interest to be a factor in deciding whether to disclose public records of employee's medical history). Moreover, in *Cline* we limited a context-driven analysis as follows: "The interest may be pecuniary, or the public may have an interest because their legal rights or liabilities are affected. It does not mean anything so narrow as mere curiosity." *Cline*, 177 W.Va. at 33, 350 S.E.2d at 544.

**19.** We agree with the circuit court's decision not to release the eight e-mails, but disapprove of the circuit court's context-driven determination that the eight e-mails would have been ordered disclosed had Justice Maynard not recused himself from cases involving Massey Energy Company. *See Schmehl v. Helton*, 222 W.Va. 98,

106 n. 7, 662 S.E.2d 697, 705 n. 7 (2008) ("[T]his Court may in any event affirm the circuit court on any proper basis, whether relied upon by the circuit court or not."); *Murphy v. Smallridge*, 196 W.Va. 35, 36–37, 468 S.E.2d 167, 168–69 (1996) ("An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support.").

**20.** As we previously indicated, as a result of the circuit court's resolution of this case based upon the AP's request for injunctive relief, it did not have to reach the AP's claim for declaratory judgment. We leave for the circuit court to determine on remand to what extent, if any, the AP's request for declaratory judgment has merit

Affirmed, in Part; Reversed, in Part; and Remanded.

Justice WORKMAN dissents and reserves the right to file a dissenting opinion.

WORKMAN, Justice, concurring, in part, and dissenting, in part:

(Filed Nov. 18, 2009)

I agree with the majority's conclusions to this extent:

(1) A trial court may conduct an *in camera* review of records subject to a request under West Virginia's Freedom of Information Act, West Virginia Code §§ 29B-1-1 to -7 (2007 & Supp.2009) ("FOIA").

(2) E-mails are "writings" subject to disclosure under FOIA, and FOIA may be used to obtain nonexempt "public records" of the judicial branch.

(3) A personal e-mail communication by a public official or public employee, which does not relate to the conduct of the public's business, is not a public record. (However, as more fully set forth herein, I do not agree with the majority's conclusion that the messages at issue in this case do not relate to the conduct of the public's business.)

(4) Campaign-related e-mails are not *per se*[1] subject to disclosure.

But while the lower court released the five campaign-related e-mails (albeit for the wrong reason, i.e. that they were public records because they related to campaign activity), and the majority has held that none of the thirteen e-mails were public records, I would hold that all thirteen e-mails at issue should be considered "public records," because they contain information relating to the conduct of the public's business, based on the context in which they were written. They

reflect that there was an ongoing personal relationship between a sitting Supreme Court Justice and the chief corporate officer of a litigant in a major case at a time when the Justice was participating in that case. John Q. Citizen is entitled to have that information and to accord to it whatever weight and meaning he deems appropriate.

Accordingly, I must respectfully dissent from the majority's conclusion that a determination of whether an e-mail communication is a public record subject to FOIA disclosure is restricted to an analysis of the content of the writing and that such analysis cannot be context-driven. Further, I disagree with the majority's conclusion that the e-mails which are the subject of this case were strictly personal and therefore exempt from public disclosure. While it is accurate that the **substance** of the messages was primarily personal in nature,[2] it is that very fact, when viewed in the context of the juxtaposition of Justice Maynard's position as a Supreme Court Justice with his participation in the then-pending litigation involving Mr. Blankenship's companies, which makes them relevant to the conduct of the public's business. The fact that a judicial officer is a close personal associate of a litigant whose case he is hearing *is* relevant public information.

### I. The Factual Background

In order to better understand the issues before this Court and the important role that the context of a communication can play in determining whether a writing contains information that relates to the conduct of the public's business, a more thorough description of the factual background of this case is needed. The majority provides no factual background whatsoever, so that the casual reader might never understand why the context of the communications is so important in

---

in light of our disposition of the injunctive relief decision.

**1.** A writing generated on a public computer, or otherwise prepared, owned and retained by a public body, that provided information relating to the conduct of the public's business, as apart from the conduct of the campaign, would be a public record.

**2.** One of the e-mails released by the circuit court contained a comment by Justice Maynard that

could be construed as relating to the merits of a case involving Mr. Blankenship and a Massey subsidiary, which was at that time pending before a circuit court in West Virginia. Because circuit court cases can ultimately be appealed to the Supreme Court of Appeals, an e-mail commenting on the merits of such a case arguably contains information relating to Justice Maynard's conduct of the public's business, based on content alone.

resolving whether these were public records. All the majority tells us is that Mr. Blankenship is the Chief Executive Officer ("CEO") of Massey Energy Corporation, but with only that information, one might be left to wonder why his relationship with Justice Maynard or their communications would be of interest to the Associated Press ("AP") or to the general public of the State of West Virginia. That background is essential to a meaningful examination of this legal issue.

In early 2008, the AP submitted two requests pursuant to West Virginia's FOIA to Steven D. Canterbury, the Administrative Director of the West Virginia Supreme Court of Appeals. Both requests sought a variety of documents, including records reflecting communications between Justice Elliot E. Maynard and Donald L. Blankenship. At the time of the AP's requests, an appeal of a civil verdict in the amount of approximately $50 million against Massey Energy Company, *Caperton v. A.T. Massey Coal Company, Inc.*, 225 W.Va. 128, 690 S.E.2d 322 (2009), was pending before this Court. Mr. Blankenship, as the Chairman and CEO of Massey Energy Company,[3] was obviously closely connected to the defendant corporate entity in that suit.

Prior to the AP's FOIA requests, on November 20, 2007, the Court, with Justice Maynard voting in the majority, had issued its first decision in the *Caperton* case, reversing the $50 million verdict against Massey in a 3–2 vote. On December 20, 2007, following the verdict against them, the Plaintiffs in *Caperton* filed petitions for rehearing. While those petitions were pending, in early January 2008, photos surfaced showing Justice Maynard and Mr. Blankenship together in Monte Carlo, Monaco, during the summer of 2006—thus prior to the Court's original deci-

sion in *Caperton*, but while that case was pending.

Shortly after the photos surfaced, the Plaintiffs in *Caperton* filed motions asking Justice Maynard to recuse himself from that case. The AP filed its first FOIA request on January 16, 2008, while that motion to recuse was pending. Justice Maynard then officially recused himself from all pending Massey cases on January 18, 2008.[4] On January 24, 2008, the Court, without Justice Maynard's participation, granted the Plaintiffs' petitions for rehearing in *Caperton* and vacated its November 2007 decision.[5]

After the AP submitted the first of its FOIA requests on January 16, 2008, Mr. Canterbury released certain information, but refused to release thirteen e-mails that had been sent by Justice Maynard to Mr. Blankenship from Justice Maynard's official Supreme Court of Appeals e-mail address. The AP then made its second request on February 29, 2008, and Mr. Canterbury again refused to disclose the e-mails. The thirteen e-mails at issue had been sent over a two-year time period, from January 2006 through November 2007. At all relevant times, *Caperton* was pending before the Court in some form.

In addition, throughout the fall of 2007 and winter of 2008, Justice Maynard was in the midst of a re-election campaign, seeking to secure another term on the West Virginia Supreme Court of Appeals.[6] It is under these circumstances that the AP made its FOIA request.

## II. Discussion

At the outset, an examination of West Virginia's FOIA statute is in order. It provides that "[e]very person has a right to inspect or copy any *public record* of a public body of this state...." W. Va.Code § 29B–

---

3. In 2000, A.T. Massey Coal Company, Inc., was renamed Massey Energy Company.

4. At the time of the AP's FOIA request, Massey Energy Company was a party to several other cases also pending in this Court, most of which involved worker's compensation claims.

5. The Court issued its second decision in *Caperton* on April 3, 2008, again voting 3–2 in favor of Massey. After the Plaintiffs appealed that decision, the United States Supreme Court reversed

and remanded. The case was heard for a third time in September 2009, and the Court issued its third decision on November 12, 2009, again ruling favor of Massey, but this time by a vote of 4–1.

6. By September 2008, when the Circuit Court of Kanawha County, West Virginia, finally ruled on the AP's FOIA request, Justice Maynard had lost his bid for re-election.

1–3(1) (emphasis added). The focus of the majority's decision, and my disagreement therewith, centers on the definition of "public record." West Virginia Code § 29B–1–2(4) defines a "public record" as "any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body." Notably, nothing in the plain language of the statute prevents a court from considering the "context" in which a document is written in determining whether it "contains information relating to the conduct of the public's business."

In its "declaration of policy" explaining the principles on which it was enacting the FOIA law, the Legislature stated that "all persons are … entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." *Id.* at § 29B–1–1. "To that end, the provisions of this article shall be liberally construed…." *Id.* This directive by the Legislature should not be taken lightly.

Despite this clear directive, however, the majority construes the definition of "public record" narrowly, not liberally, by holding that a court's consideration of whether a particular writing is a public record is confined to the literal content of that document. I would adopt a more liberal construction, recognizing that information relating to the conduct of the public's business may be contained in the context in which a document is written, in addition to the actual words of that writing.

### A. The Majority's Analysis

In support of its position, the majority cites cases from many other jurisdictions around the country holding that purely personal e-mails are not subject to disclosure. Unlike the instant case, those seeking disclosure of records in the cited cases primarily rely on the contention that records should be public by virtue of the fact that they are generated by a public official on a public computer, paid for by public funds, or generated during work hours at a public place.[7]

The cases cited hold that these factors alone do not make a document a public record. I agree that the same is true under West Virginia's FOIA.

However, in each and every case cited, there is either a lengthy, fact-specific discussion as to why the documents at issue are determined to be personal in nature, and thus exempt from disclosure under that state's FOIA, or the case is remanded to a lower court for such analysis. In *Pulaski County v. Arkansas Democrat–Gazette, Inc.*, 370 Ark. 435, 260 S.W.3d 718 (2007), for example, the Supreme Court of Arkansas concluded that "[c]omparing the nature and purpose of a document with an official's or agency's activities to determine whether the required nexus exists *necessarily requires a fact-specific inquiry.*" *Id.* at 724 (emphasis added). Moreover, it recognized that while the personal notes of a public official are not usually "public records" in Arkansas, "[t]here may be instances, however, in which *the personal activities of a public official or employee are inextricably linked to his or her governmental role.*" *Id.* at 722 (*quoting* John J. Watkins & Richard J. Peltz, *The Arkansas Freedom of Information Act,* 91 and 93 (m & m Press, 4th ed., 2004)) (emphasis added).

Moreover, most of the cases cited by the majority also provide some standard for analyzing writings that might otherwise be considered personal in nature. For example, courts look to whether the writing contained a " 'substantial nexus' " to governmental activity, *Griffis v. Pinal County*, 215 Ariz. 1, 156 P.3d 418, 421 (2007), or whether the documents had "a demonstrable connection" to the performance of public functions, *Denver Publishing Company v. Board of County Commissioners of County of Arapahoe*, 121 P.3d 190, 192 (Colo.2005).

The majority in our case, however, performs no such factual analysis nor does it discuss the appropriate analytical framework for determining whether a writing relates to the conduct of the public's business. In-

---

7. This is not the contention of the AP in the instant case. Indeed, in its reply brief, the AP specifically disavowed Mr. Canterbury's asser-

tion to that effect, re-affirming its position that, to be disclosed, the records must relate to "the conduct of the public's business."

stead, they simply make a conclusory statement that all the e-mails at issue in the instant case are personal in nature, without attempting to discuss whether an e-mail between a sitting Supreme Court Justice and the CEO of a corporate litigant with a pending case worth over $50 million creates such a substantial nexus or has any other demonstrable connection to the conduct of the public's business.

I am equally unpersuaded by the majority's reliance on two federal FOIA cases, *Gallant v. National Labor Relations Board*, 26 F.3d 168 (D.C.Cir.1994), and *Bloomberg, L.P. v. United States Securities and Exchange Commission*, 357 F.Supp.2d 156 (D.D.C. 2004). In each of those cases, the reviewing court interpreted the term "agency records" under the federal Freedom of Information Act, 5 U.S.C. §§ 551 to 559. Unquestionably, the determination of an "agency record" under the federal FOIA bears little relation to what constitutes a "public record" under West Virginia's FOIA. Because the federal statute does not define "agency record," the United States Supreme Court has looked to the definition of agency records set forth in the Records Disposal Act, 44 U.S.C. § 3301, which indicates that "agency records" must be made *"under Federal law or in connection with the transaction of public business." U.S. Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 145, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989).

Requiring that a record be made "in connection with the transaction of public business," significantly narrows the scope of what constitutes an "agency record," as compared to West Virginia's statutory requirement that the document must simply *relate* to the conduct of the public's business. Because West Virginia's definition of "public record" is significantly broader than the federal definition, I find the analysis of the federal statute unhelpful and misleading in the context of the instant case.

Furthermore, the majority rejects the reasoning in *Cowles Publishing Co. v. Kootenai County Board of County Commissioners*, 144 Idaho 259, 159 P.3d 896 (2007), which I find persuasive in the instant case. In *Cowles*, the Supreme Court of Idaho held

that the context in which a writing is generated is relevant to whether it may be considered a public record. In that case, a county prosecutor had exchanged e-mails with the manager of a juvenile education and training court, who he supervised and with whom he was romantically involved. *Id.* at 898. After a scandal emerged involving the official duties of the manager, the prosecutor publicly defended her actions. *Id.* Determining that the personal e-mails between the two were subject to disclosure under that state's FOIA, the Supreme Court of Idaho stated:

> The public has a legitimate interest in these communications between this elected official and the employee whom he hired and supervised because when the JET Court's financial problems and eventual demise became apparent to the public, Douglas defended Kalani's management to both the Board and the public. Whether he did so as her supervisor defending her job performance, or whether he did so because of an alleged inappropriate relationship is a public concern. *Put another way, Douglas's reasons for defending Kalani relate to the conduct and administration of the public's business.*

*Id.* at 900 (emphasis added). Thus, the context of the relationship between the prosecutor and the manager transformed communications which would otherwise have been strictly of a personal nature into communications relating to the conduct of the public's business.

To distinguish *Cowles*, the majority relies on a difference in the language of our FOIA statute and the one found in Idaho. In Idaho "[a] public record 'includes, but is not limited to, any writing containing information relating to the conduct or administration of the public's business prepared, owned, used *or* retained by any state agency, independent public body corporate and politic or local agency regardless of physical form or characteristics.'" *Id.* at 900 (*quoting* Idaho Code § 9–337(13)).

As the Circuit Court of Kanawha County noted in the instant case, Idaho's definition of "public record" closely mirrors West Virginia's definition. Both define "public record" as a writing containing information relating

to the conduct of the public's business, which is prepared, owned, used or retained by a public body. Indeed, the only difference of any significance to this case is that Idaho's definition includes the "but not limited to" provision. The majority reasons that this provision "permits the disclosure of *any writing,* even if it does not involve 'the conduct of the public's business.'"

What the majority fails to recognize, however, is that, in *Cowles,* the "but not limited to" provision of Idaho's FOIA was completely irrelevant to the Supreme Court's decision. Explaining its statutory scheme, the Idaho Supreme Court stated that

> a record may be a public record if it is a writing that (1) contains information relating to the conduct or administration of the public's business, *and* (2) was prepared, owned, used or retained by a governmental agency. However, our legislature has broadly defined public records; other records and writings may qualify even if they do not meet this definition.

159 P.3d at 900 (internal citation omitted). In reviewing the writings at issue in that case, however, the Idaho Supreme Court concluded "it is clear that the emails contain information relating to the conduct and administration of the public's business," and that they were prepared, owned, and used by a public body. *Id.* at 900–01. The "but not limited to" phrase contained within Idaho's statute was *not discussed in analyzing that case* and thus was completely irrelevant to the court's decision. Put another way, even if Idaho's statute did not contain the "but not limited to" provision, the reasoning of the Idaho Supreme Court would not have been affected in *Cowles.* Consequently, I cannot agree with the majority that the "but not limited to" provision distinguishes the basis for the holding in *Cowles.*

In reaching its conclusion, the majority's opinion completely ignores the various ways

that the context in which a document is written can both provide information and implicate its designation as a public record. Indeed, the majority limits its discussion of "context" to whether or not the public's interest in, or fascination with, an issue should be considered in determining its status as a public record.[8] On this question, I agree with the majority that the public's personal curiosity, or lack thereof, in a particular writing should not influence whether the document is a public record. West Virginia's FOIA does not contemplate such consideration, and I find no reasonable public policy basis for including such consideration. That a curious public may be interested in the details of a public official's private life does not mean that writings revealing aspects of such private life can be equated to "information relating to the conduct of the public's business." In fact, completely personal e-mails are not accessible under FOIA. Thus, I agree with the majority that the public's interest, i.e. purely personal curiosity, in a particular issue is not relevant to a court's determination of whether a particular document is a public record.

## B. The Role of Context

Two ways in which a consideration of "context" is not only relevant, but necessary, to a FOIA determination immediately come to mind. First, context necessarily must be considered where the meaning of a writing is not apparent on its face. For example, consider a hypothetical e-mail from a judge to a personal friend that simply states: "Go ahead and rent the boat." A consideration of the context in which that e-mail was written is necessary to determine whether it contains information relating to "the conduct of the public's business." If the judge and the recipient of that e-mail are merely discussing a planned weekend adventure, and the friend has no connection to the court or any pending cases, the e-mail is clearly personal and

8. It is important to distinguish between the "public's interest" and "the public interest." As used by the majority, the "public's interest" refers to the population's curiosity or fascination with an issue or person, such as interest in some aspect of a public figure's personal life. "The public interest," on the other hand, refers to "[s]omething in which the public as a whole has a

stake." *Blacks Law Dictionary* 1350 (9th ed. 2009). For example, the public may be very "interested" in the fashion choices or personal habits of an elected official, but such matters are not something in which the public as a whole has a stake, and thus do not relate to "the public interest."

does not contain information relating to the conduct of the public's business. As such, it would not be a public record nor subject to disclosure under FOIA.

If, however, the judge sent the hypothetical e-mail to a personal friend who also happened to be hired by the judge to plan a court retreat, and the boat was being rented for that purpose using public funds, such statement does relate to the conduct of the public's business. Specifically, the context in which the e-mail was sent reveals that it relates to official court business and involves the expenditure of public funds. As such, it would be considered a public record and be subject to disclosure under FOIA.

In this example, the meaning of the content of the e-mail depends on understanding the circumstances in which it was written. Thus, "context" can be central to determining whether the content relates to "the conduct of the public's business."

Second, the context in which a document is written can provide, in and of itself, information relating to the conduct of the public's business. The mere fact that Justice Maynard and Mr. Blankenship exchanged e-mails (the content of which had nothing to do with the case then pending before the Supreme Court of Appeals) demonstrates virtually nothing when examined solely by their literal content.[9] But the public can garner from the context of the e-mails that the two are friends. That information is relevant under the circumstances of their roles as Justice and litigant, and thus such information should be subject to disclosure as a public record.[10]

By way of analogy, the well-settled law in the area of free speech rights provides support for this proposition. Specifically, the United States Supreme Court has recognized that, in determining if particular speech— whether spoken aloud or in written form— relates to a "public concern," and thus is subject to protections under the First Amendment, a court must consider not only the content of that speech, but the context in which it is spoken. *Connick v. Myers,* 461 U.S. 138, 145–46, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Specifically, in addressing this issue, the Supreme Court has stated, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, *and context* of a given statement, as revealed by the whole record." *Id.* at 147–48 (emphasis added).

Although the test for "public record" under West Virginia's FOIA obviously is not identical to the test for whether particular speech relates to a "public concern," the parallels are clear. In both cases, a court is attempting to discern whether a communication relates to a private or public matter. Like a determination of whether particular speech addresses a "public concern," I believe that a determination of whether a particular writing "relates to the conduct of the public's business" must also include a consideration of the context in which the communication is made.

To better explain how the context in which a writing was created can determine whether it relates to the conduct of the public's business, I return to my earlier hypothetical example. Assume that the e-mail sent from the judge to his personal friend, which stated simply, "Go ahead and rent the boat," is merely in reference to a planned weekend adventure. Further assume that this personal friend also happens to be a party litigant in a case pending before the judge. In such scenario, the content of the e-mail, taken alone, does not provide information relating to the conduct of the public's business; it merely provides information relating to weekend plans between friends. Nevertheless, the context in which that e-mail was written, by a judge to a party litigant, provides, in and of itself, information relating to that judge's conduct of the public's business. It indicates to the reader that the judge and that party have a relationship of such a na-

9. In fact, with the one exception described in note 2, *supra,* the e-mails are basically innocuous.

10. Justice Maynard clearly has a right to personal associates, and nothing in this opinion makes any judgment as to whether Justice Maynard in any way acted improperly with regard to continuing to sit on the Massey case during the time of the e-mails. That is not the issue before this Court.

ture that they would spend a weekend together. While such relationship does not necessarily indicate that the judge will be biased in his or her judicial decisions or rule in an unjust manner, the mere fact that the e-mail was sent "contains information" relating to the judge's performance of his or her public duties.

In the case at hand, a Justice sitting on the West Virginia Supreme Court of Appeals communicated by e-mail on a somewhat regular basis with a friend who was the Chairman and CEO of a party litigant with a case pending before the Court. With one exception, the literal content of those e-mails did not contain information relating to the conduct of public business. The fact that those e-mails had been sent, however, did contain relevant information. First and foremost, it discloses the existence of a personal relationship between a sitting Justice and a CEO of a party litigant. In addition, when the AP made its first FOIA request, a motion filed by the Plaintiffs in *Caperton* seeking Justice Maynard's recusal from that case was pending, the basis of which was his personal relationship with Mr. Blankenship. The fact that the e-mails were sent, albeit on issues

unrelated to matters pending before this Court, is clearly relevant to the relationship between Justice Maynard and Mr. Blankenship. Because that relationship was the basis of a motion for recusal, the relationship was itself related to Justice Maynard's conduct of the public's business.[11]

Because of the context in which the e-mails in this case were sent, and in light of the legislative intent expressed in West Virginia's FOIA statute, as well as extensive case law from this Court indicating that our statute is to be given a liberal interpretation in favor of the public's right to access to information,[12] I would hold that all thirteen of the e-mails at issue were public records, because they contained information relating to the conduct of the public's business. Put simply, when a judge or justice communicates, via a record that is prepared, owned and retained by a public body, with a party litigant (or someone closely connected therewith) while that party's case is pending before that judge, such communication necessarily contains information that relates to that judge or justice's conduct of the public business to the extent that it reveals the nature of the relationship between the two.[13]

11. The circuit court acknowledged that the importance of the fact that these e-mails were sent between a sitting justice and a CEO of a party litigant, when it stated:

> It is important to note that had Justice Maynard not recused himself from the *Caperton* case, and other cases involving Massey, these e-mails would have been placed into the public's business by Caperton's Motion to Recuse and the public release of the photographs of Justice Maynard and Don Blankenship. Because the information contained within the e-mail communications would have shed light on the extent of Justice Maynard's relationship with Don Blankenship and whether or not that relationship may have affected or influenced Justice Maynard's decision-making in Massey cases, the public would have been entitled to that information.

I disagree with the circuit court, however, that the e-mails were not public records because Justice Maynard had recused himself from Massey cases when the request was made. When the e-mails were sent, *Caperton* was pending, and Justice Maynard was participating in the decision. It is the context in which the writing is made that should determine whether the document contains information relating to the conduct of public business, not some subsequent action by the author.

12. "We have ... made clear that, '[t]he disclosure provisions of this State's Freedom of Information Act, W. Va.Code, 29B–1–1 *et seq.*, as amended, are to be liberally construed, and the exemptions to such Act are to be strictly construed. W. Va.Code, 29B–1–1 [1977].' Syllabus Point 4, *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985). ' *See also Daily Gazette Co., Inc. v. W. Va. Development Office*, 198 W.Va. 563, 574, 482 S.E.2d 180, 191 (1996) ('WVFOIA ... was enacted to fully and completely inform the public 'regarding the affairs of government and the official acts of those who represent them as public officials and employees.' W. Va.Code, 29B–1–1 [1977], in part.'); *AT & T Communications of West Virginia, Inc. v. Public Serv. Comm'n of West Virginia*, 188 W.Va. 250, 253, 423 S.E.2d 859, 862 (1992) ('The general policy of the [FOIA] act is to allow as many public records as possible to be available to the public.')(footnote omitted)." *In re Charleston Gazette FOIA Request*, 222 W.Va. 771, 778–79, 671 S.E.2d 776, 783–84 (2008) (footnote omitted).

13. Importantly, the mere existence of such communication in no way indicates that an improper relationship existed between the judge and the recipient, nor does the existence of such communication necessarily indicate that the judge's re-

---

**734**

Aside from mandatory disclosure under West Virginia's FOIA statute,[14] I additionally believe that such communications should be subject to public disclosure to ensure the legitimacy of the legal process. As the Commentary to Canon 1 of the Code of Judicial Conduct states, "[d]eference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges." To maintain the public confidence necessary to sustain the legitimacy of the judiciary, judges must disclose, when requested under FOIA, their communications with party litigants. Such disclosure may be required despite the fact that the literal content of such communications may not directly relate to the pending case or other conduct of public business, as in this case. Consequently, given these significant public policy concerns, and in light of the statutory requirement that West Virginia's FOIA be "liberally construed," I would hold that the *context* in which a document is written can "contain information relating to the conduct of the public's business," and should be considered when determining if a writing is a "public record."

### III. Conclusion

In light of the majority's decision that consideration of whether a document constitutes a public record is limited to the content found in the four corners of the document, the Legislature should consider amending the statute to clarify that the context in which the communication was made may also be considered. This legislative change is sorely needed if our State is to continue developing a vivacious body of law regarding the right of the public to full information.

For the reasons stated herein, I respectfully concur, in part, and dissent, in part.

---

cusal was or was not appropriate. Rather, it merely contains information that relates to the conduct of the public's business, and, as such, is subject to disclosure under West Virginia's FOIA statute.

14. Under West Virginia's FOIA statute, once a writing is determined to be a "public record," it is subject to disclosure unless it falls under one of eight exemptions. W. Va.Code § 29B–1–4. Only one of these exemptions, for "information of a personal nature, such as that kept in a personal, medical or similar file," could be of relevance here. *Id.* at § 29B–1–4(2). In the event that the "public record" includes documents of such personal nature, those documents are still subject to public disclosure unless "the public disclosure thereof would constitute an un-reasonable invasion of privacy[.]" *Id.* However, even when a writing of a personal nature could constitute "an unreasonable invasion of privacy," it is still subject to disclosure if "the public interest by clear and convincing evidence requires disclosure in the particular instance[.]" *Id.* Importantly, the exemptions are to be strictly construed against non-disclosure. *In re Charleston Gazette FOIA Request*, 222 W.Va. at 778, 671 S.E.2d at 783. For the reasons discussed throughout this opinion, I would find that the e-mails in this case, while constituting information of a personal nature, would not be exempted from disclosure, because the public interest by clear and convincing evidence requires disclosure in this instance.